EL PUEBLO DE PUERTO RICO, recurrido, *v.* JUAN NEGRÓN CALDERO, peticionario.

*Número:* CC-1998-954          *Resuelto:* 28 de junio de 2002

*Héctor A. Sostre Narváez*, abogado de la parte peticionaria; *Carlos Lugo Fiol, procurador general, Rose Mary Corchado Lorent, procuradora general auxiliar*, y *Edda Serrano Blasini, subprocuradora general.*

EL JUEZ PRESIDENTE SEÑOR ANDRÉU GARCÍA emitió la opinión del Tribunal.

I

El Ministerio Público presentó sendas acusaciones contra el Sr. Juan Negrón Caldero, imputándole la comisión del delito de homicidio[1] y violación al Art. 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. sec. 418.

Celebrado el juicio, el peticionario fue declarado culpable por el delito de homicidio y absuelto por la infracción al Art. 8 de la Ley de Armas de Puerto Rico, *supra.*

El 13 de marzo de 1998, el Tribunal de Primera Instancia emitió una sentencia mixta, para imponerle al peticionario una pena de diez años de reclusión, para cumplir seis meses en prisión y el resto de la pena bajo el beneficio de una sentencia suspendida.

El Ministerio Público objetó la sentencia impuesta al peticionario, por entender que la Ley de Sentencia Suspendida y Libertad a Prueba (Ley de Sentencia Suspendida), Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. secs. 1026-1029, excluía del privilegio a los convictos que utilicen o intenten utilizar un arma de fuego en la comisión de un delito grave o su tentativa.

El tribunal sentenciador se mantuvo en su decisión arguyendo que el acusado no fue encontrado culpable por el cargo de infracción al Art. 8 de la Ley de Armas de Puerto Rico, *supra*, por lo que se le podía conceder el privilegio de una sentencia suspendida.

Inconforme, el Ministerio Público acudió al Tribunal de Circuito de Apelaciones. El foro apelativo, a través de la Sentencia de 24 de agosto de 1998, revocó la sentencia

---

[1] Art. 85 del Código Penal, 33 L.P.R.A. sec. 4004.

mixta recurrida. La oportuna reconsideración planteada por el peticionario fue declarada "no ha lugar" mediante Resolución de 30 de septiembre de 1998 y notificada el 14 de octubre de 1998.

El 30 de noviembre de 1998,[2] el peticionario presentó una petición de *certiorari* ante este Tribunal, planteando los siguientes señalamientos de error:

> Error I
> Erró el Honorable Tribunal de Circuito de Apelaciones al revocar la sentencia mixta dictada por el Juez de Instancia concediéndole al peticionario los beneficios de una sentencia suspendida al aplicar la Ley Núm. 33 de 27 de julio de 1993 al caso de autos.

> Error II
> En la alternativa, es inconstitucional la Ley Núm. 33 de 27 de julio de 1993, ya que tiene el efecto práctico de excluir de los beneficios de la sentencia suspendida el delito de homicidio y, al así hacerlo, crea una clasificación arbitraria sin un vínculo racional entre la clasificación y el interés gubernamental. Petición de *certiorari*, pág. 4.

## II

En el caso de autos nos corresponde dilucidar si una persona convicta por el delito de homicidio voluntario, cometido con un arma de fuego para la cual tenía licencia de poseer y portar, sigue siendo acreedora del beneficio de una sentencia en libertad, Ley Núm. 259, *supra*, luego de la enmienda introducida por la Ley Núm. 33 de 27 de julio de 1993.

La Ley de Sentencia Suspendida implementó en nuestra jurisdicción el sistema que le confiere a un con-

---

[2] El término para presentar el recurso de *certiorari* ante el Tribunal Supremo vencía el 13 de noviembre de 1998, pero quedó interrumpido de acuerdo con nuestra Resolución de 2 de octubre de 1998 en *In re Meds. Juds. Emerg. H. Georges II*, 146 D.P.R. 711 (1998). El término de treinta (30) días para presentar el recurso ante este Tribunal, contados a partir del 31 de octubre de 1998, vencía el domingo 29 de noviembre de 1998, por lo que el recurso presentado el 30 de noviembre de 1998 se hizo dentro del término permitido por ley.

victo la oportunidad de cumplir su sentencia —o parte de ella— en libertad mientras observe buena conducta y guarde las restricciones impuestas por . el tribunal sentenciador. Véanse: *Pueblo v. Zayas Rodríguez*, 147 D.P.R. 530 (1999); *Pueblo v. Molina Virola*, 141 D.P.R. 713 (1996); *Pueblo v. Pacheco Torres*, 128 D.P.R. 586 (1991).

En nuestros pronunciamientos hemos reconocido el carácter rehabilitador de esta ley, que pretende convertir al individuo en un miembro útil para la sociedad.[3] *Pueblo v. Bonilla*, 148 D.P.R. 486 (1999); *Pueblo v. Texidor Seda*, 128 D.P.R. 578 (1991); *Pueblo v. Vega Vélez*, 125 D.P.R. 188, 195 (1990); *Vázquez v. Caraballo*, 114 D.P.R. 272 (1983). "La probatoria es, pues, un recurso rehabilitador para el convicto cuyos antecedentes penales y sociales no sean de naturaleza tal que su libertad represente un peligro social." E.L. Chiesa, *Derecho procesal penal de Puerto Rico y Estados Unidos*, Bogotá, Ed. Forum, 1992, Vol. III, pág. 565.

En cuanto a la naturaleza del beneficio de una sentencia suspendida, hemos expresado que se trata de un privilegio y no de un derecho. *Pueblo v. Zayas Rodríguez*, supra; *Pueblo v. Molina Virola*, supra; *Pueblo v. Álvarez Maurás*, 100 D.P.R. 620 (1978); *Pueblo v. Rivera*, 79 D.P.R. 880 (1957).

Sin lugar a dudas, la imposición de la pena en libertad queda a la sana discreción del juez sentenciador y a que el delito no sea de los expresamente excluidos por la ley. Véanse: *Pueblo v. Texidor Seda*, supra; *Vázquez v. Caraballo*, supra; *Pueblo v. Martínez Rivera*, 99 D.P.R. 568 (1971); *Pueblo v. Llanos Virella*, 97 D.P.R. 95 (1969).[4]

[3] Cuando se implantó este sistema, se tuvo el propósito de implementar la Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, ed. 1999, pág. 421, que dispone, en lo pertinente: "propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social." *Pueblo v. Vega Vélez*, 125 D.P.R. 188, 200 (1990).

[4] Esta discreción será respetada por este Foro, en ausencia de abuso de ella. *Pueblo v. Ortega Santiago*, 125 D.P.R. 203 (1990).

## III

█  La Ley Núm. 33, *supra*, enmendó el Art. 2 de la Ley de Sentencia Suspendida, 34 L.P.R.A. sec. 1027 (ed. 1991), quedando en ese momento, en lo pertinente, redactado de la manera siguiente:

> El Tribunal Superior podrá suspender los efectos de la sentencia que se hubiera dictado en todo caso de delito grave que no fuere asesinato, robo, incesto, extorsión, violación, crimen contra natura, actos lascivos o impúdicos cuando la víctima fuere menos de 14 años, secuestro, escalamiento, incendio malicioso, sabotaje de servicios públicos esenciales, infracción a las secs. 561 et seq. del Título 2 en su modalidad de delito grave, 8 y 10 de la "Ley de Armas de Puerto Rico" o cualquier violación a la Ley de Explosivos de Puerto Rico, que constituya delito grave y cualquier delito grave que surja como consecuencia de la posesión o uso ilegal de explosivos o sustancias que puedan utilizarse para fabricar explosivos o detonadores, artefactos o mecanismos prohibidos por la referida Ley de Explosivos de Puerto Rico, *o cuando la persona utilice o intente utilizar un arma de fuego en la comisión de un delito grave o su tentativa* ....[5] (Énfasis suplido.)

Aunque en *Pueblo v. Álvarez Rodríguez*, 154 D.P.R. 566 (2001), nos negamos a realizar una interpretación de la referida disposición más allá de su letra, somos concientes que la situación de autos requiere un análisis más profundo. Lo que innegablemente distingue este caso de *Pueblo v. Álvarez Rodríguez*, supra, es que el señor Negrón Caldero resultó absuelto de las infracciones a la Ley de Armas de Puerto Rico, ya que estaba habilitado por el Estado para su posesión y portación.

█  Frente a la misión de interpretar una ley, los tribunales tenemos que hallar los propósitos perseguidos por la Asamblea Legislativa en su creación, y hacerlos

---

[5] La Ley Núm. 301 de 2 de septiembre de 1999, sustituyó "Tribunal Superior" por "Tribunal de Primera Instancia", y añadió "imprudencia crasa o temeraria al conducir un vehículo de motor en estado de embriaguez". 34 L.P.R.A. sec. 1027.

prevalecer. *Chase Manhattan Bank v. Mun. de San Juan*, 126 D.P.R. 759 (1990).

> ... [E]n el proceso de indagar la intención del legislador es necesario examinar el historial legislativo. Si la ley tiene una exposición de motivos, ésta generalmente recoge el propósito que inspiró su creación. En los casos en que. la ley carece de una exposición de motivos, o cuando aún teniéndola, no contiene la intención legislativa, es útil consultar otros documentos tales como los informes de las comisiones que estudiaron el proyecto de ley y los debates celebrados cuando la medida fue discutida en el hemiciclo, según aparecen en el Diario de Sesiones. De igual manera se pueden utilizar los anteproyectos y los informes alrededor de los mismos que son preparados fuera de la Asamblea Legislativa, cuando ésta los tuvo ante sí y adoptó sustancialmente los anteproyectos. *Chévere v. Levis*, 150 D.P.R. 525, 540 (2000).

La Exposición de Motivos de la Ley Núm. 33 (1993 (Parte 1) Leyes de Puerto Rico 169) dispone:

> Las estadísticas demuestran que un *alto por ciento de las personas que delinquen utilizan armas de fuego en la comisión del delito*. Esto ha creado una situación de alta peligrosidad para la ciudadanía.
>
> Las personas que cometan delito bajo esta circunstancia, una vez convictas, pueden disfrutar de los beneficios de la sentencia suspendida y libertad bajo palabra si cumplen con los requisitos establecidos para la concesión de estos privilegios.
>
> Los beneficios de sentencia suspendida o libertad bajo palabra no son un derecho que pueda reclamarse, sino un privilegio legislativo cuya concesión y administración se confía al Tribunal o a la Junta de Libertad bajo Palabra, respectivamente. Ambos privilegios son medidas penológicas que disfrutan los convictos como parte de su tratamiento de rehabilitación y se considera que mientras disfrutan de estos privilegios están técnicamente en reclusión.
>
> *Dado el peligro que representa para nuestra sociedad el que las personas que utilizan o intentan utilizar un arma de fuego en la comisión de un delito grave o su tentativa estén en la libre comunidad* antes de que cumplan el término de reclusión que se les imponga, esta ley excluye del beneficio de la sentencia suspendida y de la libertad bajo palabra a dichas personas. (Énfasis suplido.)

Esta enmienda, sumamente amplia, se originó con el

objetivo de contraatacar el alza criminal que estaba ace-
chando a la isla, especialmente el aumento en los delitos
cometidos con armas de fuego.([6]) La Ley Núm. 33, *supra*,
nace como resultado del P. de la C. 400 de 25 de marzo de
1993, 12ma Asamblea Legislativa, 1ra Sesión Ordinaria.
Según el Informe de la Cámara de Representantes de 13 de
julio de 1993, pág. 3,

> [e]l alto porcentaje de personas que delinquen utilizando ar-
> mas de fuego ha creado una situación de alta peligrosidad
> para la ciudadanía. Es un peligro para nuestra sociedad el que
> estas personas estén en la libre comunidad antes [de] que
> cumplan el término de reclusión que se les imponga.

En la página 5 del mencionado informe encontramos:

> Es por todos conocido que el resultado por la utilización de
> un arma de fuego en la comisión de un delito puede acarrear
> resultados muy serios contra la vida humana, atentando con-
> tra la integridad física de la víctima. Es necesario *disuadir al*
> *criminal de la utilización de armas de fuego en la comisión de*
> *delitos.* Sabemos que de aprobarse el P. de la C. 400, esto cons-
> tituiría un temor adicional que disuadirá a los criminales.
> (Énfasis suplido.)

En el informe se utilizaron datos recopilados por la Po-
licía de Puerto Rico que demuestran un aumento constante
de los delitos con armas de fuego, así en 1992 se cometie-
ron ciento veintiocho mil ochocientos setenta y cuatro
(128,874) delitos Tipo I, que se dividen en delitos de violen-
cia (asesinatos, robos, agresiones agravadas y violaciones
por la fuerza) y delitos contra la propiedad (escalamientos,
apropiaciones ilegales y hurto de vehículos). En 1991 se
cometieron ciento diecinueve mil setecientos treinta y un
(119,731) delitos Tipo I; ciento veinticuatro mil trescientos

---

([6]) El Informe del Senado P. de la C. 400 de 15 de junio de 1993, 12ma Asamblea
Legislativa, 1ra Sesión Ordinaria, pág. 1, expresa lo siguiente:

"El P. de la C. 400 tiene como propósito responder al reclamo de la opinión
pública del país, a buscar los remedios más acertados para frenar la ola criminal que
amenaza seriamente en mantener un estado de intranquilidad, buscar [sic], y angus-
tia a todos los integrantes de la sociedad puertorriqueña."

setenta y uno (124,371) en 1990; ciento diez mil veintisiete (110,027) en 1989. De los ochocientos sesenta y cuatro (864) asesinatos que se cometieron en 1992, setecientos cuarenta y uno (741) fueron cometidos con armas de fuego, esto es: armas automáticas de 9 milímetros; 223 (rifles AR 15); armas compatibles para la AK (arma rusa); además del revólver común. En 1991, el 61% de los delitos fueron cometidos con armas de fuego; en 1992, la cifra aumentó a un 85%.[7]

Del historial legislativo de la Ley Núm. 33, *supra*, puede fácilmente colegirse que el legislador trató de proteger a la sociedad puertorriqueña de los *criminales de oficio*. Para ello, como mecanismo disuasivo, excluyó del régimen de sentencia suspendida a los convictos de delito grave quienes hayan utilizado armas de fuego ilegalmente poseídas o portadas en la comisión del delito o en su tentativa.

## IV

■ Entendemos que el legislador no contempló, por lo cual no pretendió, excluir del beneficio de una sentencia en probatoria a una persona convicta por el delito de homicidio utilizando un arma de fuego para la cual tenía licencia de poseer y portar. Veamos.

■ También forma parte de las normas de interpretación que: cuando un estatuto, a través de su lenguaje, no demuestra con claridad la intención legislativa, es necesario rechazar la *interpretación literal* cuando ésta sea contraria al propósito legislativo. *Mun. San Juan v. Banco Gub. Fomento*, 140 D.P.R. 873 (1996). Véanse: *Pueblo v. Zayas Rodríguez*, supra; *Clínica Juliá v. Sec. de Hacienda*, 76 D.P.R. 509, 520 (1954). Esta norma nos llevó a decir en

---

[7] Informe de 4 de mayo de 1993, enviado por la Policía de Puerto Rico a la Representante Hon. Zaida Hernández Torres, *Presidenta de la Comisión Especial sobre Litigación para Combatir el Crimen.*

*Pueblo v. Tribunal Superior*, 104 D.P.R. 363, 366 (1975):

> ... Aún cuando el idioma en su interpretación literal contradiga el propósito de una disposición estatutaria, lo que debe ceder es el idioma y no la realidad que motiva el estatuto. Importa en consecuencia penetrar la superficie verbal del problema, ante nos, precisar el diseño y razón de ser de las disposiciones legales que aquí nos ocupan, sopesar los intereses en juego, para intentar acercarnos a la interpretación más justiciera.

■ Es norma de derecho penal que la interpretación de los estatutos penales debe hacerse de manera restrictiva en cuanto perjudica al acusado y liberalmente en cuanto lo favorece. *Pueblo v. Bonilla*, 148 D.P.R. 486 (1999); *Pueblo v. Rodríguez Román*, 128 D.P.R. 121 (1991); *Pacheco v. Vargas Alcaide*, 120 D.P.R. 404 (1988); *Pueblo v. Arandes de Celis*, 120 D.P.R. 530 (1988); *Pueblo v. Ríos Nogueras*, 114 D.P.R. 256 (1983); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. JTS, 1987, Vol. I, págs. 462–463.

Para lograr una interpretación enmarcada en la realidad legal y social, es preciso que analicemos la Ley de Armas de Puerto Rico.

■ Allí encontramos, tanto en la ley vigente al momento en que al peticionario se le expidieron sus licencias, Arts. 15-21 de la Ley Núm. 17 de 19 de enero de 1951, según enmendada, 1951 Leyes de Puerto Rico 427, 435-443, como en la actual Ley de Armas de Puerto Rico, Art. 2.02 *et seq.* de la Ley Núm. 404 de 11 de septiembre de 2000 (25 L.P.R.A. sec. 456a *et seq.*), que el interesado en obtener una licencia debe satisfacer una serie de requisitos mínimos. Entre éstos, ser mayor de edad, *no tener antecedentes penales*, estar capacitado mentalmente, no ser ebrio habitual ni adicto a sustancias controladas, entre otras. Esta serie de atributos distinguen a las personas que tienen licencia para portar o poseer armas de fuego de los

delincuentes habituales o criminales de oficio, personas a quienes la Ley Núm. 33, *supra*, intentó disuadir de la comisión de delitos. Estas personas han pasado por el cedazo judicial o administrativo para obtener sus licencias.

A su vez, el delito de homicidio voluntario tipificado en el Art. 85 del Código Penal dispone:

> Toda persona que matare a otra en ocasión de súbita pendencia o arrebato de cólera será sancionada con pena de reclusión por un término fijo de diez (10) años. 33 L.P.R.A. sec. 4004.

El elemento de maldad o malicia está ausente en el delito de homicidio; la muerte ilegal ocurre en ocasión de súbita pendencia o arrebato de cólera. *Pueblo v. Sulman*, 103 D.P.R. 429 (1975); *Pueblo v. Rivera Alicea*, 125 D.P.R. 37 (1989). Mal puede catalogarse como criminal habitual a una persona que, aunque ha cometido un delito, ha actuado *sin maldad.*

Este delito presupone una persona ordinaria, que por cólera, pendencia o emoción violenta, causada por una provocación suficiente de la víctima, pierde el dominio de sí misma. *Pueblo v. Belmonte Colón*, 106 D.P.R. 82 (1977).[8] Es por ello que no se configura la intención específica del asesinato.

*El delito de homicidio voluntario cometido con un arma de fuego, para la cual se tenía licencia, es totalmente ajeno a la realidad social que el legislador trató de remediar.*

Las estadísticas policiales utilizadas por el Cuerpo Legislativo para evaluar la enmienda, no distinguían entre el delito de homicidio y el de asesinato, ambos estaban incluidos en la misma categoría, dentro de los delitos de violencia.[9] Tampoco se menciona ni se distingue si el arma utilizada para cometer el delito grave o su tentativa

---

[8] Véanse: *Pueblo v. Reyes Acevedo*, 100 D.P.R. 703 (1973); *Pueblo v. González Pagán*, 120 D.P.R. 684 (1988).

[9] Véase esc. 6.

es un arma legalmente portada o poseída por el autor del delito.

Las leyes necesitan ser interpretadas y aplicadas en comunión con el propósito social que las inspira, sin desvincularlas de la realidad social y del problema humano que persiguen resolver. *Col. Ing. Agrim. P.R. v. A.A.A.*, 131 D.P.R. 735, 756 (1992); *Pueblo v. Pizarro Solís*, 129 D.P.R. 911, 918 (1992).

Si tenemos en mente el fin perseguido por la Legislatura al aprobar la Ley Núm. 33, *supra*, esto es, *disuadir a los criminales habituales* de utilizar armas de fuego *"ilegítimas"* en la comisión de los delitos graves, nos damos cuenta de que la situación frente a la cual hoy nos encontramos merece ser distinguida.

> Siempre tiene que haber una razón para que exista una ley, y situaciones que no estén dentro de la razón de un precepto no deben ser considerada como incluidas en él, aunque aparezca de la letra de la ley. (Citas omitidas.)[10]

Es por ello que entendemos que la intención del legislador es ajena al caso de autos, en que el señor Negrón Caldero resultó convicto de homicidio voluntario con un arma de fuego para la cual tenía licencia otorgada por el Estado. Esta persona, que tiene el privilegio de portar un arma, ha pasado previamente por el cedazo de la autoridad para su otorgamiento, *no es un criminal que habitualmente cometa delitos.*

Sostener que esta persona está excluida del beneficio de sentencia suspendida conlleva a un resultado ilógico y no querido por el legislador. Las interpretaciones que conlleven a un resultado absurdo deben ser rechazadas. *Mun. San Juan v. Banco Gub. Fomento*, supra. Consecuentemente, no aplica al presente lo resuelto en el caso *Pue-*

---

[10] R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, pág. 246.

blo v. *Álvarez Rodríguez*, supra, al efecto de que no es acreedor al beneficio de sentencia suspendida aquella persona que resulta convicta del delito de homicidio voluntario cometido con un arma de fuego poseída ilegalmente. Es de notar que en ese caso el imputado resultó convicto de la posesión y portación ilegal del arma de fuego con la cual cometió el delito.

El Tribunal de Primera Instancia determinó, en el caso de autos, que el señor Negrón Caldero era elegible para cumplir parte de la sentencia en probatoria. Negársela por una aplicación literal del estatuto acarrea consecuencias contrarias al propósito legislativo de la Ley Núm. 33, *supra*, y al espíritu rehabilitar de la Ley de Sentencia Suspendida, *supra*.

## V

■ Luego de la interpretación que de la Ley Núm. 33, *supra*, hemos materializado en esta opinión, resulta inmeritorio entrar a considerar la impugnación sobre la validez constitucional de esta ley. En esa forma seguimos la reiterada norma "[d]e que los tribunales no deben abordar planteamientos de índole constitucional cuando se puede disponer del caso en armonía con los intereses del apelante y en consonancia con los mejores fines de la justicia". *Pueblo ex rel. M.G.G.*, 99 D.P.R. 925, 927 (1971).[11] Véanse: *Nadal v. Depto. Rec. Nat.*, 150 D.P.R. 715 (2000); *Banco Popular v. Mun. de Mayagüez*, 126 D.P.R. 653, 660 (1990); *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610, 618 (1981).

■ En *P.S.P. v. Com. Estatal de Elecciones*, 110 D.P.R. 400, 429 (1980), establecimos que

---

[11] Es norma jurisprudencial de autolimitación judicial que no se considerará el aspecto constitucional de una ley cuando se puede resolver el asunto mediante un fundamento alterno. *Pueblo v. Marrero*, 79 D.P.R. 649, 652 (1956); *Mari Bras v. Alcaide*, 100 D.P.R. 506, 513 (1972); *Pacheco v. Srio. de Instrucción Pública*, 108 D.P.R. 592, 601 (1979); *Díaz Aponte v. Comunidad San José*, 130 D.P.R. 782 (1992).

... nuestra misión suprema es salvar —por preeminencia del derecho envuelto— aquellas situaciones en las cuales una interpretación literal y rigurosa plantearía interrogantes y objeciones de carácter constitucional. Así, cuando el texto legal habla y se configura en términos *absolutos*, requiere que hagamos un esfuerzo por evitar el choque constitucional, si bien validándolo, pero atemperándolo si posible, y se logra satisfactoriamente la armonía entre el interés gubernamental envuelto .... (Énfasis en el original.)

En este caso en particular, es el interés el derecho del peticionario a gozar del beneficio de una sentencia suspendida.

*Se dictará sentencia para revocar al Tribunal de Circuito de Apelaciones y dejar en todos sus efectos la sentencia dictada por el Tribunal de Primera Instancia.*

El Juez Asociado Señor Corrada Del Río disintió por entender que el dictamen del Tribunal de Circuito de Apelaciones es sustancialmente correcto y lo confirmaría. El Juez Asociado Señor Fuster Berlingeri no intervino. El Juez Asociado Señor Rivera Pérez se inhibió.