ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MELVIN ALVARADO CRUZ<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrida | KLRA202400685 | *Revisión Judicial* procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 149984<br><br>Sobre: No Concesión del privilegio de Libertad Bajo Palabra |

Panel integrado por su presidente, el Juez Rodríguez Casillas, el Juez Marrero Guerrero y el Juez Campos Pérez

Campos Pérez, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de febrero de 2025.

Comparece la parte recurrente, el señor Melvin Alvarado Cruz (señor Alvarado Cruz o recurrente), quien solicita nuestra intervención para dejar sin efecto la *Resolución* de la Junta de Libertad Bajo Palabra (Junta o recurrida), emitida el 6 de noviembre de 2024 y notificada el 10 de diciembre de 2024.[1] Mediante dicha *Resolución*, la Junta le denegó el privilegio de libertad bajo palabra al recurrente al concluir que éste debía cumplir con las recomendaciones que surgen del informe psicológico rendido por la Sección Programa de Evaluación y Asesoramiento (SPEA).

Por los fundamentos que expondremos, confirmamos la determinación administrativa.

**I.**

El señor Alvarado Cruz se encuentra cumpliendo una sentencia consolidada de reclusión de cincuenta y cinco (55) años por el delito de Asesinato en Segundo Grado e infracción a la Ley de Armas de Puerto Rico. Conforme al expediente, extinguirá su sentencia el 1 de agosto de 2056.

---

[1] Apéndice de la recurrida, págs. 2-5.

Número Identificador

SEN2025_____

El 9 de noviembre de 2023, el recurrente se sometió a una evaluación psicológica bajo SPEA y estuvo a cargo de la Psicóloga Clínica, la Dra. Yaminet Rodríguez López (doctora Rodríguez López). La doctora Rodríguez López remitió su *Informe de Evaluación Psicológica* en el cual plasmó sus hallazgos luego de realizarle varias pruebas.[2] Entre éstas, se resalta la prueba *Minnesota Multiphasic Personality Inventory-2* (MMPI-2), que mide la posibilidad de sintomatología asociada a psicopatología. La doctora Rodríguez López explicó que del MMPI-2 surgieron indicadores de posible dificultad de introspección, defensividad, irritabilidad, dificultad expresando sus emociones, posible psicopatología, poca tolerancia a la frustración, impulsividad, comportamiento asocial, retraimiento, distanciamiento emocional e incluso un proceso de trastorno de pensamiento.[3] Ante este cuadro, la doctora Rodríguez López recomendó que el señor Alvarado Cruz recibiera intervenciones con algún profesional de la conducta humana para atender los indicadores de personalidad a la luz de la MMPI-2. De igual forma, recomendó que el recurrente se sometiera a una evaluación psiquiátrica para atender indicadores de personalidad a la luz de la MMPI-2.

El 23 de julio de 2024, la Sra. Nancy N. Rosado Cuevas, Técnico de Servicios Sociopenal, emitió un *Informe de Libertad Bajo Palabra* sobre el señor Alvarado Cruz. En éste, esbozó que el recurrente contaba con residencia para su plan de salida, tenía una oferta de empleo y amigo consejero. La Junta adquirió jurisdicción sobre el recurrente el 1 de octubre de 2024 y le citó para una *Vista de Consideración*. Dicha vista se celebró el 2 de octubre de 2024 mediante el sistema de videoconferencia y comparecieron el señor

---

[2] Apéndice de la Recurrida, págs. 25-33.
[3] Apéndice de la Recurrida, pág. 32.

Alvarado Cruz y la Sra. Iraida C. Hernández Benítez, Técnico de Servicio Sociopenal.

Producto de la vista, el 30 de octubre de 2024 el Sr. José A. Medina Hernández, Oficial Examinador a cargo, remitió un *Informe de Oficial Examinador* en el cual realizó las siguientes determinaciones de hechos:

1. Cumple sentencia de 55 años por infracción al Art. 82 (Asesinato en Segundo Grado) y violación al Art. 5.04 (Portación y Uso de Armas de Fuego Sin Licencia) de la *Ley Núm. 404 del 11 de septiembre de 2000*, según enmendada. Conforme a la totalidad del expediente, tentativamente extingue su sentencia el 13 de julio de 2056.

2. Al peticionario le han realizado la prueba de ADN conforme al Artículo 8 de la Leu Núm. 175 de 24 de julio de 1998, según enmendada el 19 de enero de 2015.

3. El peticionario ha sido evaluado por la sección Programa de Evaluación y Asesoramiento (SPEA) y culminó la terapia Aprendiendo a Vivir sin violencia el 14 de noviembre de 2023.

4. El peticionario presenta en su plan de salida vivienda corroborada y es aceptado, además de oferta de trabajo; según el Informe de Libertad Bajo Palabra realizado el 23 de julio de 2024. El candidato para fungir como amigo consejero fue investigado y cumplimentó el correspondiente documento para ello.

5. Según surgió de la vista de consideración celebrada el peticionario se encuentra en nivel de custodia mínima seguridad desde el 29 de octubre de 2021.

6. El peticionario labora en el área de brigadas de mantenimiento.

7. El peticionario estudia en la institución penal donde está ingresado 501 Bayamón asistente de contabilidad.

8. El peticionario culminó la terapia Trastornos Adictivos el 30 de marzo de 2015 y también finalizó la terapia Control de Impulso el 19 de septiembre de 2019.

El Oficial Examinador concluyó que el recurrente no cualificaba para el privilegio de libertad bajo palabra. Razonó el Oficial Examinador que, a pesar de que el señor Alvarado Cruz cumplía con varios de los requisitos para el privilegio de libertad bajo

palabra, éste no había cumplido con las recomendaciones de la doctora Rodríguez López sobre evaluación psiquiátrica.

Así las cosas, la Junta emitió una *Resolución* el 6 de noviembre de 2024 en la cual esbozó las siguientes determinaciones de hechos:

1. Cumple sentencia de 55 años por infracción al Art. 82 (Asesinato en Segundo Grado) y violación al Art. 5.04 (Portación y Uso de Armas de Fuego Sin Licencia) de la *Ley Núm. 404 del 11 de septiembre de 2000,* según enmendada. Conforme a la totalidad del expediente, tentativamente extingue su sentencia el 13 de julio de 2056.

2. Al peticionario le han realizado la prueba de ADN conforme al Artículo 8 de la Leu Núm. 175 de 24 de julio de 1998, según enmendada el 19 de enero de 2015.

3. El peticionario ha sido evaluado por la sección Programa de Evaluación y Asesoramiento (SPEA) y culminó la terapia Aprendiendo a Vivir sin violencia el 14 de noviembre de 2023.

4. El peticionario presentó en su plan de salida vivienda con su pareja, Linette Castro Medina. El hogar propuesto ubica en Villa Universitaria Villa Blanca Apartment #4 en el municipio de Humacao. El mismo fue corroborado por el DCR. La oferta de trabajo propuesta es LCM Promotion Service, administración de propiedades, limpieza de propiedades y yates remodelaciones livianas. La compañía es propiedad de Linette Castro Molina, pareja; según el Informe de Libertad Bajo Palabra realizado el 23 de julio de 2024. El candidato para fungir como amigo consejero es Jean Carlos Ribot Encarnación, fue investigado y cumplimentó el correspondiente documento para ello.

5. Según surgió de la vista de consideración celebrada el peticionario se encuentra en nivel de custodia mínima seguridad desde el 29 de octubre de 2021.

6. El peticionario labora en el área de brigadas de mantenimiento.

7. El peticionario estudia asistente de contabilidad en la institución penal (501 Bayamón) donde está ingresado.

8. El peticionario culminó la terapia Trastornos Adictivos el 30 de marzo de 2015 y también finalizó la terapia Control de Impulso el 19 de septiembre de 2019.

La Junta determinó no concederle el privilegio de libertad bajo palabra al señor Alvarado Cruz. La recurrida notó que, aun cuando el recurrente culminó la terapia Aprendiendo a Vivir sin violencia el 14 de noviembre de 2023, de su evaluación surge una recomendación para que el señor Alvarado Cruz reciba intervención con profesionales de la salud de la conducta humana y que fuese sometido a una evaluación psiquiátrica. Consecuentemente, la Junta declaró No Ha Lugar la solicitud de libertad bajo palabra del señor Alvarado Cruz y señaló para noviembre de 2025 la fecha de reconsideración automática.

Inconforme, el señor Alvarado Cruz presentó un recurso incompleto y deficiente. No incluyó señalamientos de error en el cuerpo de su petición de revisión judicial, y naturalmente, tampoco fundamentó en derecho su reclamo. Por su parte, la Junta compareció mediante *Escrito en Cumplimiento de Resolución* y solicitó la confirmación de la *Resolución* recurrida.

**II.**

### *La revisión judicial*

Es sabido que, al revisar las determinaciones administrativas finales, los tribunales apelativos estamos compelidos a conceder deferencia, por la experiencia y conocimiento pericial que se presume tienen los organismos ejecutivos y municipales para atender y resolver los asuntos que le han sido delegados. *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garage Isla Verde, LLC*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016). Al respecto, el Tribunal Supremo de Puerto Rico ha reiterado que las determinaciones de los organismos administrativos "poseen una presunción de legalidad y corrección que los tribunales debemos respetar mientras la parte que las impugna no presente la evidencia suficiente para derrotarlas".

(Énfasis nuestro). *Rolón Martínez v. Supte. Policía, supra*; *Torres Rivera v. Policía de PR, supra*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 215 (2012); *Torres Santiago v. Depto. Justicia*, 181 DPR 969, 1002-1003 (2011). Por ende, nuestra intervención sólo se justifica cuando el ente administrativo haya obrado de forma arbitraria, ilegal o irrazonable. En esas circunstancias, entonces, cederá la deferencia que ostenta en las aplicaciones e interpretaciones de las leyes y los reglamentos que administra. *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009). En torno a esto, en *Torres Rivera v. Policía de PR, supra*, el Tribunal Supremo expuso las normas básicas sobre el alcance de la revisión judicial:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que, si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Torres Rivera v. Policía de PR, supra*, pág. 628.

Así, pues, es norma asentada que el norte al ejercer nuestra facultad revisora es el criterio de razonabilidad. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Torres Rivera v. Policía de PR, supra*, pág. 626; *Empresas Loyola v. Com. Ciudadanos*, 186 DPR 1033, 1042-1043 (2012). Por lo tanto, intervendremos únicamente cuando el organismo recurrido haya actuado de una manera tan irrazonable que su actuación constituya un abuso de discreción. *Super Asphalt v. AFI y otro, supra*, pág. 821; *Graciani Rodriguez v. Garage Isla Verde, LLC, supra*, pág. 127; *Rolón Martínez v. Supte. Policía, supra*.

***El privilegio de la libertad bajo palabra***

La Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1501 *et seq.* (Ley Núm. 118), creó la Junta de Libertad Bajo Palabra. El ente administrativo está facultado para conceder el privilegio de cumplir la última parte de una condena en libertad bajo palabra a cualquier persona recluida en una institución correccional de Puerto Rico. *Benítez Nieves v. ELA et al.*, 202 DPR 818, 825 (2019). Al ejecutar la potestad delegada, **la Junta está autorizada a imponer las condiciones que estime necesarias para la concesión del beneficio privilegiado**. Art. 3 de la Ley Núm. 118, 4 LPRA sec. 1503. Claro está, dichas condiciones restrictivas se suman a las restricciones que, de ordinario, el ciudadano común está obligado a observar en nuestra jurisdicción. *Benítez Nieves v. ELA et al.*, *supra*, que cita a *Morrissey v. Brewer*, 408 US 471, 478 (1972). Ello responde a que el beneficio de la libertad bajo palabra es considerado un privilegio, no un derecho reclamable. A esos fines, la libertad bajo palabra sólo se otorgará cuando sirva al mejor interés de la sociedad y propicie la rehabilitación moral y económica del liberado, según la sana discreción de la Junta y los tribunales. *Quiles v. Del Valle*, 167 DPR 458, 475 (2006), que cita a *Pueblo v. Negrón Caldero*, 157 DPR 413 (2002); *Pueblo v. Zayas Rodríguez*, 147 DPR 530, 536 (1999).

Para implantar las disposiciones de su ley habilitadora, la Junta adoptó el ahora derogado *Reglamento de la Junta de Libertad Bajo Palabra*, Reglamento Núm. 9232, de 18 de noviembre de 2020, que en su Artículo X establecía los criterios que la Junta evalúa para considerar a las personas recluidas que soliciten el privilegio de libertad bajo palabra.[4] Entre los criterios a considerar, la Junta

---

[4] El Reglamento Núm. 9232 era el ordenamiento vigente a la fecha de la vista administrativa. No obstante, el Reglamento Núm. 9603, presentado el 25 de septiembre de 2024 y efectivo el 25 de octubre de 2024, comprende disposiciones similares a las citadas. Véase, Artículo X, *Criterios a ser considerados por la Junta.*

evalúa el historial de salud de los peticionarios. En particular, la Sección 10.1 (8) disponía que:

.    .    .    .    .    .    .    .

8. Historial de salud

a. Se tomará en consideración todos los informes emitidos por cualquier profesional de la salud mental, que formen parte del historial psicológico preparado por el Departamento de Corrección y Rehabilitación y/o el historial psiquiátrico preparado por Salud Correccional, según aplique.

b. Historial médico del peticionario.

c. Tratamientos para condiciones de salud que haya recibido o reciba el peticionario.

.    .    .    .    .    .    .    .

Por su parte, en la Sección 10.1 (12) del Reglamento Núm. 9232[5] le otorgó a la Junta discreción para considerar todos los criterios, incluyendo el historial de salud, según estime conveniente. De igual forma, la Junta también tiene la discreción de considerar cualquier otro criterio meritorio con relación a la rehabilitación de los peticionarios y el mejor interés de la sociedad.

**III.**

A la luz del derecho anteriormente discutido, resolvemos que la Junta ejerció su discreción adecuadamente conforme lo dispone la Ley Núm. 118, *supra*, y actuó dentro de los sanos principios de derecho administrativo, por lo que confirmamos su determinación de denegarle la libertad bajo palabra al recurrente. Veamos.

El recurrente nos solicita que revoquemos la *Resolución* emitida por la Junta en noviembre de 2024 —sobre denegación de privilegio— bajo la premisa de que la recomendación de SPEA no concuerda con el requisito de evaluación psiquiátrica. Arguyó que ya contaba con una evaluación psicológica realizada el 5 de septiembre de 2024 por la Sra. Julimar Sáez Colón, quien no encontró que se reunieran los criterios para evaluar

---

[5] Una idéntica disposición se encuentra en el inciso (13) de la Sección 10.1, *Criterios para elegibilidad,* del Reglamento Núm. 9603.

psiquiátricamente al señor Alvarado Cruz. El recurrente señaló, además, que si la evaluación psiquiátrica fuese necesaria, éste no podría trabajar en la libre comunidad, como actualmente lo hace.

El Reglamento Núm. 9232 disponía los criterios que la Junta evalúa para considerar a las personas recluidas que soliciten el privilegio de libertad bajo palabra. Entre éstos, la Junta evalúa el historial de salud de los peticionarios. Ciertamente, el recurrente cuenta con un plan de salida estructurado en lo concerniente al amigo consejero, residencia y oferta de empleo. No obstante, de la recomendación de la SPEA se desprende que el señor Alvarado Cruz no cuenta con una evaluación reciente y que la recomendación de los profesionales de la salud fue que el recurrente se sometiera a una evaluación psiquiátrica. Al respecto, el 13 de febrero de 2025, el recurrente instó una moción ante esta curia en la que informó que el 21 de enero de 2025 fue evaluado por la psiquiatra, la Dra. Mercedes Velázquez, tal como lo ordenó la Junta. Ello así, los resultados de dicha evaluación podrán examinarse, junto al resto de los requisitos reglamentarios, en la reconsideración automática pautada para este año.

En fin, el propósito de la Junta es promover la rehabilitación de las personas confinadas. De igual forma, la Junta también tiene el deber de proteger la seguridad de la población en general. Por lo tanto, consideramos que la *Resolución* emitida por la Junta es correcta.

**IV.**

Por los fundamentos antes expuestos, se confirma la *Resolución* recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones