ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| | | |
|---|---|---|
| **EFRAÍN RIVERA PÉREZ**<br><br>Recurrente<br><br>v.<br><br>**JUNTA DE LIBERTAD BAJO PALABRA**<br><br>Recurrida | KLRA202400678 | **REVISIÓN** procedente de la **Junta de Libertad Bajo Palabra**<br><br>Caso Núm.:<br>**121278** |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

## SENTENCIA

En San Juan, Puerto Rico, a 24 de febrero de 2025.

Comparece ante nos, mediante recurso de revisión judicial, por derecho propio y en *forma pauperis*,[1] Efraín Rivera Pérez (Rivera Pérez o Recurrente), integrante de la población confinada, y nos solicita que revisemos la *Resolución* emitida el 1 de octubre de 2024 por la Junta de Libertad Bajo Palabra (Junta o JLBP),[2] Caso Núm. 121278. Mediante dicha *Resolución*, la JLBP le denegó al Recurrente el privilegio de la libertad bajo palabra.

Por los fundamentos que discutiremos a continuación, confirmamos la *Resolución* de la JLBP.

## I.

Según el Formulario FE-I-3, *Informe Breve para Referir Casos de Sentencia por Delito Grave y Menos Grave ante la Junta de Libertad Bajo Palabra*,[3] radicado el 6 de junio de 2024, Rivera Pérez

---

[1] El 23 de enero de 2025, el Procurador General presentó un *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación*, mediante el cual contestó lo alegado en el recurso presentado por el Recurrente y solicitó la desestimación del caso al Recurrente no solicitar autorización para comparecer en *forma pauperis*. Luego de concederle un término a Rivera Pérez para que presentase su solicitud conforme la Regla 78 del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 78, el 10 de febrero de 2025, el Recurrente presentó una *Solicitud y Declaración para que se Exima de Pago de Arancel por Razón de Indigencia*. Al evaluar la misma, declaramos No Ha Lugar a la *Solicitud de Desestimación* y autorizamos la comparecencia del Recurrente en *forma pauperis*.
[2] Apéndice de *Escrito en Cumplimiento de Resolución y Solicitud de Desestimación*. Notificada el 15 de noviembre de 2024.
[3] *Íd.*, págs. 4-7.

extingue una sentencia consolidada de veinte (20) años, que cumple desde el 4 de abril de 2016.[4] Según el Formulario, el Recurrente cumple dicha sentencia al haber sido encontrado culpable por: tres (3) infracciones al Artículo 5.04 de la Ley de Armas de Puerto Rico de 2000, Ley Núm. 404-2000, derogada, 25 LPRA sec. 458c (Portación y Uso de Armas de Fuego sin licencia); una (1) infracción al Artículo 6.01 de la Ley de Armas de Puerto Rico de 2000, *Íd.* (Fabricación, Distribución, Posesión y Uso de Municiones); y, dos (2) infracciones al Artículo 404 (a) de la Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4 de 23 de junio de 1971, según enmendada, 24 LPRA sec. 2404 (Posesión de Sustancias Controladas). El Formulario dispone que cumple la sentencia el 11 de noviembre de 2033 y a partir del 11 de julio de 2018, la JLBP adquirió jurisdicción sobre él. El Formulario también detalla su ajuste institucional. Este dispone que:

> [Rivera Pérez] [s]e encuentra en custodia mediana desde el 30 de noviembre de 2023, reclasificado de mínima por negarse a realizar prueba para detectar uso de sustancias controladas. Completó su grado 12 el 30 de abril de 2024. Se benefició de terapias de Trastornos Adictivos el 24 de abril de 2018. El 9 de abril de 2024[,] finalizó terapias de Patrones adictivos. Estructuró su plan de salida en todas las áreas. No ha incurrido en sanciones disciplinarias al presente. No realiza labores en la actualidad.

Finalmente, el Formulario detalló un "Plan de Salida", en el que el Recurrente señaló dónde y con quién residiría si fuese concedida la libertad bajo palabra, así como el trabajo, escuela o tratamiento que recibiría fuera de la institución. Como hogar, señaló que estaría residiendo con su hermano, el señor Omar Rivera Pérez, en el Barrio Cialito Centro en el Municipio de Ciales.[5] También identificó como "amigo y consejero" al señor Héctor L. Maysonet

---

[4] *Íd.*, pág. 4.
[5] *Íd.*, pág. 6.

Prados. En cuanto al trabajo, informó que trabajaría en la Compañía KCS, dedicada al mantenimiento de hoteles.[6]

La información provista en el Formulario fue incorporada al *Informe de Libertad Bajo Palabra* (*Informe de LBP*),[7] redactado por el Técnico de Servicios Socio-Penales, Arturo Bagué Arocho, y radicado el 24 de septiembre de 2024. Según el *Informe de LBP*, el Técnico Socio-Penal realizó una investigación del plan de salida del Recurrente. Sobre la residencia identificada por Rivera Pérez en su plan de salida, el Técnico Socio-Penal señaló que "[e]sta cuenta con [cuatro] 4 cuartos dormitorios, un baño, una cocina, sala y demás facilidades. La residencia no cuenta con un cuarto disponible y separado para ubicar al [Recurrente]".[8] Sobre la oferta de empleo identificada, el Técnico Socio-Penal señaló que pese haber realizado varias llamadas al local, al momento de redactar el *Informe de LBP*, no había recibido comunicación de vuelta.[9]

A base del *Informe de LBP* y la vista celebrada el 25 de septiembre de 2024, a la cual compareció el Recurrente mediante el sistema de videoconferencia, el 27 de septiembre de 2024, la Oficial Examinadora Marie J. Díaz Valcárcel redactó un *Informe del Oficial Examinador*.[10] En este, luego de analizar el caso particular del Recurrente al amparo de lo dispuesto en la Ley de la Junta de Libertad Bajo Palabra, Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 LPRA sec. 1501 *et seq.* (Ley de la JLBP), la Oficial Examinadora recomendó no conceder el privilegio.

Posteriormente, el 1 de octubre de 2024, la JLBP emitió una *Resolución* con su determinación final.[11] En esta, la Junta acogió el *Informe del Oficial Examinador* en su totalidad. Concluyó que "[d]e

---

[6] *Íd.*
[7] *Íd.*, págs. 21-26.
[8] *Íd.*, pág. 24.
[9] *Íd.*, pág. 25.
[10] *Íd.*, págs. 28-29.
[11] *Íd.*, págs. 30-33.

la investigación realizada[,] se determina que la vivienda no es viable" y que "no pudo ser debidamente corroborada la oferta de empleo sometida por el peticionario [Rivera Pérez]". Además, que el Recurrente se encontraba en custodia de mediana seguridad desde el 30 de noviembre de 2023 y que el 29 de diciembre de 2023, se negó a realizarse una prueba toxicológica, por lo que fue sancionado con cuarenta y cinco (45) días sin comisaría y otros. Resaltó que el Artículo 3-D de la Ley de la JLBP, 4 LPRA sec. 1503d, establece los criterios que la Junta tomará en consideración al momento de evaluar un caso. Estos criterios son:

> (1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.
>
> (2) Las veces que el confinado haya sido convicto y sentenciado.
>
> (3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.
>
> (4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.
>
> (5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.
>
> (6) La edad del confinado.
>
> (7) El o los tratamientos para condiciones de salud que reciba el confinado.
>
> (8) La opinión de la víctima.
>
> (9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.
>
> (10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.
>
> (11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho.
>
> *Íd.*, Artículo 3-D.

A base de los criterios discrecionales que provee la Ley de la JLBP, y considerando que la libertad bajo palabra constituye un privilegio y no un derecho, la Junta resolvió que el Recurrente no cualificaba para beneficiarse del privilegio. Dicha *Resolución* fue notificada al Recurrente el 15 de noviembre de 2024.

Inconforme, el 9 de diciembre de 2024, el Recurrente presentó el recurso ante nuestra consideración. En este, alegó que el 21 de noviembre de 2024, luego de que la JLBP emitiera su determinación, el Comité de Clasificación y Tratamiento lo reclasificó a custodia mínima.[12] Además, aunque no señaló un error específico, solicitó que, como parte de las opciones de tratamiento y rehabilitación, se le otorgara un "Hogar de Rehabilitación" en la libre comunidad como parte del privilegio de libertad bajo palabra. Es decir, el Recurrente nos ha solicitado la revocación de la *Resolución* de la Junta y que le concedamos la libertad bajo palabra, con arreglos para proveerle un hogar de rehabilitación. El 23 de enero de 2025, la parte recurrida presentó su oposición al recurso presentado.

Con el beneficio de la postura de las partes, nos encontramos en posición para discutir el derecho aplicable.

**II.**

**A.**

El Artículo 4.006 (c) de la Ley de la Judicatura de 2003, Ley Núm. 201-2003, (4 LPRA sec. 24y (c)), faculta al Tribunal de Apelaciones a atender las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas. Los organismos administrativos merecen la mayor deferencia judicial, puesto que estos tienen el conocimiento especializado sobre los asuntos que les han sido delegados. *Hernández Feliciano v. Mun. Quebradillas*, 211

---

[12] Recurso de Revisión Judicial presentado por la parte recurrente el 9 de diciembre de 2024, pág. 1.

DPR 99 (2023); *Torres Rivera v. Policía de PR*, 196 DPR 606 (2016); *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712 (2012). Al momento de revisar una decisión administrativa, el principio rector es el criterio de la razonabilidad de las decisiones y actuaciones de la agencia. *Íd.* Todas las decisiones administrativas gozan de una presunción de legalidad y corrección, por lo cual la parte que las impugne debe producir suficiente evidencia para derrotarla. *Íd.*

Las facultades adjudicativas de una agencia están regidas por la LPAU, *supra*, y por la jurisprudencia aplicable. La Sección 3.1 de la LPAU, *Íd.*, requiere que las agencias fundamenten sus resoluciones con determinaciones de hecho y conclusiones de derecho. Estas determinaciones deben reflejar que se consideraron y resolvieron los conflictos de prueba y, además, deben describir tanto los hechos probados como los rechazados. *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 265 (2007). Por lo tanto, la facultad revisora de los tribunales está limitada a determinar: (1) que el remedio concedido por la agencia fuese el apropiado; (2) si las determinaciones de hecho estuvieron basadas en evidencia sustancial que obre en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas mediante su revisión completa y absoluta. LPAU, *supra*, Sec. 4.5.

Sobre nuestra facultad revisora, el Tribunal Supremo ha expresado que:

> **[L]as determinaciones de hecho se deben sostener si se fundamentan en evidencia sustancial que surja de la totalidad del expediente administrativo**. Mientras, la deferencia antes mencionada **no se extiende de manera automática a las conclusiones de derecho** emitidas por la agencia, ya que estas serán revisables en todos sus aspectos por el tribunal. **Esto es, que el tribunal las puede revisar sin sujeción a norma o criterio alguno**.
>
> *Hernández Feliciano v. Mun. Quebradillas, supra*, pág. 115. (citas omitidas) (Énfasis nuestro).

"[L]os foros apelativos debemos diferenciar entre asuntos de interpretación estatutaria, en la que los tribunales son especialistas, y los asuntos propios de la discreción o la pericia administrativa". *Íd.*, pág. 116. Al revisar las determinaciones de hechos, los tribunales solo pueden sustituir su criterio por el de la agencia cuando las determinaciones no están fundamentadas en evidencia sustancial. "Evidencia sustancial es 'aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión'". *Empresas Ferrer v. A.R.Pe.*, *supra*, pág. 266 (citando a *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 615 (2006)). La parte que impugne una determinación "tiene que convencer al tribunal de que la evidencia en la cual se apoyó la agencia para formular tales determinaciones no es sustancial". *Otero v. Toyota*, 163 DPR 716, 728 (2005).

Los tribunales les deben menor deferencia a las conclusiones de derecho de las agencias. *Hernández Feliciano v. Mun. Quebradillas*, *supra*, pág. 115. Aun así, la interpretación judicial del derecho no constituye una sustitución automática de las conclusiones de derecho de una agencia. *Íd.* En otras palabras, la deferencia disminuida no trata de una revisión *de novo*. El criterio administrativo solo debe ser descartado cuando "no se pueda hallar fundamento racional que explique o justifique el dictamen administrativo". *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 36 (2018).

**B.**

La libertad bajo palabra es un privilegio que le concede el Estado, mediante la Junta de Libertad Bajo Palabra, a los confinados que cualifican para él conforme a lo dispuesto en la Ley de la JLBP. *Pueblo v. Negrón Caldero*, 157 DPR 413, 420 (2002). Dicho privilegio permite que la persona confinada cumpla la última parte de su condena en libertad bajo palabra, es decir, en la libre

comunidad, sujeto a las condiciones impuestas por la Junta. *Íd.*, Artículo 3; *Benítez Nieves v. ELA et al.*, 202 DPR 818, 825 (2019). En cuanto al objetivo de esta concesión, la ley establece lo siguiente:

> La libertad bajo palabra será decretada para el mejor interés de la sociedad y cuando las circunstancias presentes permitan a la Junta creer, con razonable certeza que tal medida habrá de ayudar a la rehabilitación del delincuente. Para determinar si concede o no la libertad bajo palabra, la Junta tendrá ante sí toda la información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado, incluyendo la actitud de la comunidad respecto a la liberación condicional del sujeto, y una evaluación que deberá someter la Administración de Corrección.

Ley de la JLBP, *supra*, Artículo 3 (a), 4 LPRA sec. 1503.

Mediante el Artículo 3-D de la Ley de la JLBP, *supra*, la Asamblea legislativa enumeró los criterios que debe tomar en consideración la Junta al momento de evaluar si procede o no la concesión del privilegio. Por otro lado, el Artículo 5 de la Ley de la JLBP dispone que la Junta "promulgará las reglas y reglamentos que crea convenientes para el mejor cumplimiento de lo dispuesto en este Artículo". *Íd.*, Artículo 5. En cumplimiento con esta disposición, se aprobó el Reglamento De La Junta De Libertad Bajo Palabra, Reglamento Núm. 9232, 18 de noviembre de 2018 (Reglamento). El Artículo X, Sección 10.1 (B) del Reglamento dispone que la Junta podrá tomar en consideración otros criterios relacionados a los enumerados en el Artículo 3-D de la Ley de la JLBP, *supra*.

Con relación a la residencia identificada en el plan de salida, el Reglamento dispone que:

> v. Para determinar si la vivienda propuesta es viable, la Junta considerará:
>
> > (a) Las características personales e historial delictivo de las personas con las cuales convivirá el peticionario en la vivienda, y cómo el peticionario se relaciona con estos.

(b) Opinión de la comunidad sobre la determinación de conceder el privilegio y las personas con las cuales convivirá el peticionario.

(c) Condición de la planta física de la residencia y cantidad de habitantes de la misma.

(d) Si la residencia propuesta está relativamente cercana a la residencia de la víctima de delito.

(e) Si existe algún impedimento en ley para que el peticionario resida en la vivienda propuesta, excepto se encuentre incluido en el contrato de vivienda o certificación de la administración correspondiente.

(f) Cualquier otra consideración que la Junta estime pertinente dentro de los méritos del caso individual.

Reglamento, *supra*, Artículo X, Sección 10.1 (B) (7) (e) (v).

Sobre la oferta de empleo que identifica el confinado en su plan de salida, el Reglamento dispone que:

i. Todo peticionario deberá proveer una oferta de empleo o, en la alternativa, un plan de estudios, adiestramiento vocacional o estudio y trabajo.

[…]

iv. La falta de oferta de empleo o estudio no será razón suficiente para denegar el privilegio.

*Íd.*, Artículo X, Sección 10.1 (B) (7) (d) (i) y (iv).

Además, la Junta deberá tomar en consideración el historial social del confinado. Sobre las medidas disciplinarias, el Reglamento dispone que se podrán tomar en consideración las medidas disciplinarias tomadas en contra del confinado salvo aquellas "en las cuales ha transcurrido un (1) año desde la fecha en que se impuso dicha medida disciplinaria". *Íd.*, Artículo X, Sección 10.1 (B) (6) (d). También considerará "[l]a clasificación de custodia, el tiempo que lleva en dicha clasificación y si hubo cambio de clasificación y las razones para ello". *Íd.*, Artículo X, Sección 10.1 (B) (3).

**III.**

Analizado el derecho aplicable, nos encontramos en posición de resolver la controversia señalada. En síntesis, el Recurrente nos

ha solicitado que revoquemos la denegatoria del privilegio de libertad bajo palabra. No obstante, al analizar el expediente, proceder de la Junta y *Resolución* emitida, resolvemos que no se cometió el error. Veamos.

El Tribunal de Apelaciones ejerce un rol revisor, por lo que no constituye un foro ante el cual las partes podrán relitigar sus casos. En este sentido, únicamente podremos basar nuestras determinaciones en los hechos que quedaron demostrados y probados en el foro primario, así como, en el caso de las revisiones judiciales, la totalidad del expediente administrativo. No podemos considerar prueba o hechos nuevos que no estuvieron presentes al momento de tomarse la determinación cuya revisión se solicita. Por lo tanto, debemos determinar si la Junta de Libertad Bajo Palabra procedió conforme al derecho, al denegarle el privilegio de la libertad bajo palabra a Rivera Pérez según la información disponible cuando emitió su determinación.

Para el 1 de octubre de 2024, fecha en la que se emitió la *Resolución* de la Junta, el Recurrente se encontraba en custodia mediana y había transcurrido menos de un (1) año desde que había sido disciplinado por la institución penal por no someterse a una prueba toxicológica. La Ley de la JLBP dispone que estos son factores que la Junta podrá considerar para determinar si concede o no el privilegio de la libertad bajo palabra y, en efecto, ambos fueron considerados por la JLBP al momento de evaluar su caso. Además, la Junta tomó en consideración la residencia y oferta de empleo que señaló el Recurrente, concluyendo que la residencia no era viable y sin poder corroborar la oferta de empleo. Fue a base de estas deficiencias en el plan de salida, así como el historial social y clasificación de custodia del Recurrente, que la Junta denegó conceder el privilegio. Todos estos factores estuvieron incluidos por

la Asamblea Legislativa como parte del análisis que debe realizar la JLBP según la ley.

En vista de que la Junta utilizó criterios contemplados por la ley y su reglamento, concluimos que actuó conforme a derecho al denegar la libertad bajo palabra. Tampoco surge del expediente que se le haya violado un derecho procesal al Recurrente o cometido un error en las determinaciones de hechos que ameriten nuestra intervención, por lo que no procede la revocación de la *Resolución*. Finalmente, al cambio de custodia haber ocurrido luego de que la Junta emitiera su determinación, se encuentra fuera del alcance del rol revisor que ejerce este Tribunal. En consecuencia, confirmamos la *Resolución*.

**IV.**

Por los fundamentos discutidos, confirmamos la *Resolución* de la Junta de Libertad Bajo Palabra.

Lo acordó y manda el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones