ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| MIGUEL A. GONZÁLEZ VELÁZQUEZ<br><br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br><br>Recurrido | KLRA202500030 | *REVISIÓN ADMINISTRATIVA* procedente de la Junta de Libertad Bajo Palabra<br><br>Caso Núm.: 146489<br><br><br>Sobre: Moción en Solicitud de Reconsideración |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda Del Toro y el Juez Pérez Ocasio

**Ronda Del Toro, Juez Ponente**

## SENTENCIA

En San Juan, Puerto Rico, a 7 de marzo de 2025.

Miguel A. González Velázquez, quien se encuentra recluido en la Institución Correccional Ponce 1,000, nos solicita que revisemos la *Resolución* que emitió la Junta de Libertad Bajo Palabra el 23 de septiembre de 2024, archivada en autos el 11 de octubre de 2024. Mediante esa determinación, se le denegó a González Velázquez el privilegio de libertad bajo palabra.

Por los fundamentos que exponemos a continuación, *confirmamos* la Resolución recurrida.

## I.

El 29 de octubre de 1998 Miguel A. González Velázquez (González Velázquez o recurrente) fue sentenciado a cumplir noventa y nueve (99) años por los delitos de Asesinato en Primer Grado (3 cargos), Tentativa de Asesinato y Ley de Armas. De acuerdo con el expediente, el recurrente cumplió el mínimo de

Número Identificador

SEN2025_____

sentencia el 2 de noviembre de 2022 y tentativamente culmina la sentencia el 15 de mayo de 2091.

La Junta de Libertad Bajo Palabra (Junta o recurrida) revisó el expediente de González Velázquez a los fines de emitir una decisión sobre la concesión, o no, de la libertad privilegiada. Tras evaluar los informes y los expedientes del Departamento de Corrección, el 23 de septiembre de 2024, archivada el 11 de octubre de 2024[1], la Junta determinó denegar el privilegio de libertad bajo palabra. En la Resolución, emitió las siguientes determinaciones de hechos:

1. Del expediente surge que el peticionario acepta la comisión de los delitos, expresa arrepentimiento.

2. Del expediente del peticionario se tomó en consideración la totalidad del expediente y la naturaleza cruel y violenta y las circunstancias crudas de los delitos cometidos, en donde asesinó a tres víctimas inocentes.

3. El peticionario se encuentra cumpliendo con el plan institucional clasificado en custodia de mínima seguridad desde el 29 de junio de 2009. El 6 de octubre de 2023 se ratificó la custodia de mínima seguridad.

4. La parte peticionaria, tiene un plan de salida estructurado y viable en las áreas de vivienda, amigo consejero y empleo, conforme se desprende del Informe Breve de Libertad Bajo Palabra del 16 de abril de 2024.

5. El 6 de julio de 2021, le fue realizada la muestra del ADN, conforme lo requiere la Ley Número 175 del 24 de julio de 1998, según enmendada.

6. El peticionario culminó el 8 de junio de 2006 las terapias de Sección Programa Evaluación y Asesoramiento (SPEA).

---

[1] Entregada al recurrente González Velázquez el 24 de octubre de 2024, según el apéndice págs. 1 y 2 del *Escrito en Cumplimiento de Resolución* que presentó la Junta de Libertad Bajo Palabra.

7.      En el expediente del peticionario obra Informe de Ajuste y Progreso con evaluación psicosocial de SPEA que fue recibido en la Junta el 31 de octubre de 2021.

Tras exponer el derecho, la Junta decretó lo siguiente:

En el caso que nos ocupa, mencionamos aquellos factores que favorecieron al peticionario y otros que no, para la concesión del privilegio. El peticionario acepta la comisión de los delitos. Del expediente del peticionario se tomó en consideración la totalidad del expediente y la naturaleza cruel y violenta y las circunstancias crudas de los delitos cometidos en donde asesinó de forma abusiva a su esposa y dos hijos menores de edad con un machete, lo que presentó factores de peligrosidad.

Acto seguido, la Junta decidió, "no conceder el privilegio de libertad bajo palabra a Miguel González Velázquez". Resaltó que el caso volverá a ser considerado para el mes de **octubre de 2025**, fecha en la cual el Departamento de Corrección y Rehabilitación deberá someter un informe de ajuste y progreso con el plan de salida debidamente corroborado. A su vez, **ordenó una evaluación psiquiátrica**.

En desacuerdo, el 8 de noviembre de 2024[2], el recurrente suscribió un escrito de Reconsideración. En la moción argumentó que está rehabilitado y que ha cumplido con su plan institucional. Sostuvo que, desde el 29 de junio de 2009, está en custodia mínima, que no ha incurrido en querellas o informes disciplinarios. Mencionó que su comportamiento durante sus veintiocho (28) años de reclusión ha sido excelente, según lo informaron más de ochenta (80) personas que trabajan en el Departamento de Corrección. Señaló que el delito por el que cumple siempre será un delito, que está pagando por eso y que ello no debe usarse para volver a enjuiciarlo. Aseveró que se arrepintió, que está

---

[2] La Junta de Libertad Bajo Palabra aseveró que el 12 de noviembre de 2024 el recurrente González Velázquez, entregó la Moción de Reconsideración, ver apéndice, págs. 7 y 8.

rehabilitado y que cumple con los criterios para que la Junta decrete su libertad bajo palabra.

Mediante Resolución del 3 de diciembre de 2024, notificada el 9 de diciembre de 2024, la Junta denegó la solicitud de reconsideración. Expresó, además, que el caso sería reconsiderado en octubre de 2025.

En desacuerdo con la determinación de la Junta, González Velázquez interpuso una *Petición de Revisión Administrativa*. La Junta presentó su posición al recurso mediante un *Escrito en Cumplimiento de Resolución*. Evaluado el expediente y con el beneficio de ambas comparecencias, disponemos.

## II.

### A.

La función revisora de este foro apelativo con respecto a las determinaciones del Departamento de Corrección, como de cualquier otra agencia, es de carácter limitado. Pérez López v. Depto. Corrección, 208 DPR 656, 674 (2022). Sus decisiones merecen nuestra mayor deferencia judicial, sobre todo, cuando es la agencia quien tiene la especialización necesaria para atender situaciones particulares sobre las cuales la ley le confiere jurisdicción. Pérez López v. Depto. Corrección, *supra*; Álamo Romero v. Adm. de Corrección, 175 DPR 314, 334 (2009).

Así, los tribunales apelativos están llamados a conceder amplia deferencia a las decisiones de las agencias administrativas. Esto se debe a la experiencia y pericia que presumiblemente tienen estos organismos respecto a las facultades que se les han delegado. Otero Rivera v. Bella Retail Group, Inc.*,* 2024 TSPR 70, 213 DPR ___ (2024); Voilí Voilá Corp. et al. v. Mun. Guaynabo, 2024 TSPR 29, 213 DPR ___ (2024); Hernández Feliciano v. Mun. Quebradillas, 211 DPR 99, 114 (2023); OEG v. Martínez Giraud,

210 DPR 79, 88-89 (2022); Super Asphalt v. AFI y otro, 206 DPR 803, 819 (2021); Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 126 (2019); Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018).

De esta forma, se ha reiterado que las decisiones de las agencias administrativas poseen una presunción de regularidad y corrección, por lo cual deben ser respetadas, a no ser que la parte que las impugne presente prueba suficiente para rebatir tal presunción. Otero Rivera v. Bella Retail Group, Inc., *supra*; ECP Incorporated v. OCS, 205 DPR 268, 281 (2020); Capó Cruz v. Jta. Planificación et al., 204 DPR 581, 591 (2020); Rolón Martínez v. Supte. Policía, *supra*.

Una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, los objetivos y la política pública que la forjaron. Benítez Nieves v. ELA et al., 202 DPR 818, 828 (2019); Torres v. Junta Ingenieros, 161 DPR 696, 712 (2004).

Asimismo, se ha reiterado que "[e]l tribunal podrá sustituir el criterio de la agencia por el propio, sólo cuando no pueda hallar una base racional para explicar la decisión administrativa". ECP Incorporated v. OCS, *supra*, pág. 282; Otero v. Toyota, 163 DPR 716, 729 (2005). Este régimen normativo se fundamenta en el principio de la razonabilidad para determinar si la actuación de la agencia es arbitraria, ilegal o irrazonable a tal grado que se considere un abuso de discreción. Otero Rivera v. Bella Retail Group, Inc., *supra;* Rolón Martínez v. Supte. Policía, *supra*. El peso de la prueba descansa entonces sobre la parte que impugna la determinación administrativa. Camacho Torres v. AAFET; 168

DPR 66, 91 (2006); Pro-Mej., Inc. v. Jta. De Planificación, 147 DPR 750, 761 (1999).

Así pues, la revisión judicial de una decisión administrativa se circunscribe a analizar lo siguiente: (1) si el remedio concedido por la agencia fue el apropiado; (2) si las determinaciones de hecho realizadas por la agencia estuvieron sustentadas por prueba sustancial que surgió del expediente administrativo, y (3) si, mediante una revisión completa y absoluta, las conclusiones de derecho fueron correctas. Otero Rivera v. Bella Retail Group, Inc., *supra;* Rolón Martínez v. Supte. Policía, *supra*, págs. 35-36.

En cuanto a las conclusiones de derecho, los tribunales apelativos tienen la facultad de revisarlas en todos sus aspectos. Otero Rivera v. Bella Retail Group, Inc., *supra*; ECP Incorporated v. OCS, *supra*, págs. 281-282. Véase, además, Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 LPRA sec. 9675. Claro está, esto no implica que los tribunales revisores tienen libertad absoluta para descartar las conclusiones e interpretaciones de dicho organismo administrativo. Otero Rivera v. Bella Retail Group, Inc., *supra*; Otero v. Toyota, *supra*, pág. 729. Por lo tanto, la interpretación de la agencia no prevalecerá cuando produzca resultados incompatibles o contrarios al propósito del estatuto interpretado y a su política pública. Moreno Lorenzo y otros v. Depto. Fam., 207 DPR 833, 843 (2021).

**B.**

La Constitución de Puerto Rico, en la Sección 19 del Artículo VI, establece como política pública que el Estado habrá de: "...reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para

hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. PR, LPRA, Tomo 1.

En este contexto la Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 LPRA sec. 1501, *et seq*. creó la Junta de Libertad Bajo Palabra, adscrita al Departamento de Corrección y Rehabilitación.  Artículo 1 de la Ley Núm. 18, 4 LPRA sec. 1501. La Junta tiene el poder de conceder a cualquier persona recluida en una institución correccional del país el privilegio de cumplir la última parte de su condena en la condición de libertad bajo palabra. Benítez Nieves v. ELA et al., 202 DPR 818, 825 (2019).

Es importante señalar que el beneficio de la libertad bajo palabra no es un derecho reclamable, sino un privilegio, cuya concesión y administración recae en el tribunal o en la Junta de Libertad Bajo Palabra. Quiles v. Del Valle, 167 DPR 458, 475 (2006); Pueblo v. Negrón Caldero, 157 DPR 413, 420 (2002), Pueblo v. Zayas Rodríguez, 147 DPR 530, 536 (1999).

El Artículo 3 de la Ley Núm. 118, 4 LPRA sec. 1503 (a), dispone, de la autoridad, poderes y deberes de la Junta. En particular, estatuye que, "[p]ara determinar si concede o no la libertad bajo palabra, la Junta tendrá ante sí toda la información posible sobre el historial social, médico, ocupacional y delictivo de cada confinado, incluyendo la actitud de la comunidad respecto a la liberación condicional del sujeto, y una evaluación que deberá someter la Administración de Corrección." Artículo 3, (a)(6).

El Artículo 3-D de la Ley Núm. 118, 4 LPRA sec. 1503d, establece los siguientes criterios que la Junta de Libertad Bajo Palabra debe considerar al momento de analizar el privilegio de libertad bajo palabra:

(1) **La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.**

(2) Las veces que el confinado haya sido convicto y sentenciado.

(3) **Una relación de liquidación de la sentencia o sentencias que cumple el confinado**.

(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

(5) **El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud**.

(6) La edad del confinado.

(7) El o los tratamientos para condiciones de salud que reciba el confinado.

(8) La opinión de la víctima.

(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

(10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.

(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento.

La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho. (Énfasis nuestro).

**C.**

A los fines de implementar las disposiciones de su ley habilitadora, la Junta adoptó el Reglamento de la Junta de Libertad Bajo Palabra, Reglamento Núm. 9232, de 18 de noviembre de 2020[3].

---

[3] Anulado por el Reglamento Núm. 9603 de 25 de septiembre de 2024, con efectividad el 25 de octubre de 2024. No obstante, el Reglamento Núm. 9232, era el vigente a la fecha en que la Junta evaluó el caso y emitió la Resolución recurrida.

El Artículo X del Reglamento Núm. 9232 establece los criterios de elegibilidad que debe considerar la Junta. En particular dispone que la Junta evaluará las solicitudes del privilegio, caso a caso, conforme al grado de rehabilitación y ajuste que presente el peticionario durante el término que ha estado recluido. Artículo X, Sección 10.1 (A). En lo pertinente a la controversia ante nos, el inciso (B) de la Sección 10.1 del Reglamento Núm. 9232, *supra*, dispone que, al evaluar los casos, se deberá considerar los siguientes criterios:

1. Historial delictivo

a. La totalidad del expediente penal.
[...]
d. Naturaleza y circunstancias del delito, por el cual cumple sentencia, **incluyendo el grado de fuerza o violencia** utilizado en la comisión del delito.
[...]

2. Una relación de liquidación de la(s) sentencia(s) que cumple el peticionario.
[...]

12. La Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad.

A su vez, la Sección 10.2 del Artículo X del Reglamento Núm. 9232, dispone que la documentación a ser considerada por la Junta para conceder o denegar el privilegio de libertad bajo palabra, será la siguiente:

A. El Departamento de Corrección y Rehabilitación, a través de sus funcionarios, empleados y/o representantes autorizados, proveerá a la Junta todo documento que contenga información relacionada a los criterios antes esbozados. La producción de estos documentos se hará para la fecha de la vista de consideración o la fecha en que se vuelva a reconsiderar el caso. En cumplimiento con lo anterior, el Departamento de Corrección y Rehabilitación, remitirá a la Junta los siguientes documentos:

1. Informe para Posible Libertad Bajo Palabra (FEI-1)

2. **El original del expediente criminal** y social del peticionario.

3. Informe de libertad bajo palabra debidamente cumplimentado.

a. El Programa de Comunidad correspondiente remitirá este informe a la Junta, incluyendo la siguiente información:

i. Corroboración del plan de salida propuesto y la opinión de la comunidad donde residirá el peticionario de concedérsele el privilegio.
ii. **Naturaleza y circunstancias del delito por el cual cumple sentencia.**
iii. Historial de antecedentes penales.
iv. Historial social, educativo, laboral, médico, de ajustes institucionales del peticionario.
v. Historial de tratamientos para condiciones de salud, tales como adicción a drogas, alcoholismo, salud mental o física, entre otras.
vi. Opinión de la víctima.

[…]
4. **Copia de las sentencias** impuestas al peticionario.

[…]
6. Hoja de liquidación de sentencia actualizada.

7. Informe Breve de Libertad Bajo Palabra.
[…]

10. Certificado de que el peticionario completó los tratamientos requeridos, y los informes de evaluación relacionados a dichos tratamientos.

[…]

12. Evaluación médica, psicológica y/o psiquiátrica
a. La Junta podrá requerir la evaluación médica, psicológica o psiquiátrica del Negociado de Rehabilitación y Tratamiento o de Salud Correccional, o entidad análoga debidamente acreditada por el Estado, en aquellos casos en que la persona se encuentre cumpliendo sentencia por delitos contra la vida y/o delitos sexuales, conforme al estado de derecho vigente a la fecha en que fue sentenciado, o en cualquier otro caso en que la Junta lo considere necesario.

b. Estos informes tendrán una vigencia de tres (3) años desde la fecha de la evaluación.

c. La Junta en su discreción podrá requerir otra evaluación, aunque tenga una vigente. (Énfasis suplido).

A la luz de la antes reseñada normativa, disponemos.

**III.**

El recurrente alegó que erró la Junta al denegarle la libertad bajo palabra, ya que estos no consideraron que se arrepintió. Mencionó que la Junta lo volvió a juzgar por el delito, a pesar de que el tribunal competente ya lo enjuició. Resaltó que la Junta no aceptó su rehabilitación, a pesar de que, más de sesenta (60) oficiales de custodia, afirman lo contrario. Indicó que otras personas, incluyendo oficiales, supervisores, religiosos y trabajadores administrativos del Departamento de Corrección, reconocieron que el recurrente estaba rehabilitado. Señaló que el 9 de diciembre de 2024, le cursó una carta a la Junta, en respuesta a la orden donde se le requería el historial psicológico y que en la referida carta le informó a la Junta que se reunió con la psicóloga. Además, que el psiquiatra del Physicians Correctional lo evaluó el 14 de noviembre de 2024 y el 5 de diciembre de 2024, y le entregaron el informe. Aseveró que la determinación de la Junta no se basó en evidencia sustancial y que el ente erró en la aplicación e interpretación de las leyes y reglamentos que administra. Solicitó que se revoque la decisión y se le ordene una nueva evaluación.

Junto al recurso, González Velázquez incluyó la carta del 9 de diciembre de 2024 y los informes de la psicóloga y del psiquiatra. A su vez, acompañó varias cartas de recomendación, certificados, cartas de aceptación de hogares religiosos, cartas de patronos, así como, la Resolución y Acuerdo del Comité de Clasificación y Tratamiento, emitida el 11 de octubre de 2024, entre otros documentos.

El recurrente González Velázquez también alegó que el 11 de octubre de 2024 el Comité de Clasificación y Tratamiento

acordó referirle a un programa de Desvío y Comunitario por haber cumplido satisfactoriamente con su plan institucional asignado.

La Junta por su parte, presentó su oposición al recurso. Incluyó como parte de los anejos, el Informe de Libertad Bajo Palabra emitido el 15 de agosto de 2022. En este informe se recopila, entre otros aspectos, las circunstancias del delito. Sobre este aspecto, se menciona, en síntesis, que González Velázquez, armado de un machete, infirió varias heridas a tres personas, causándole la muerte. Además, que el recurrente realizó actos dirigidos a ocasionar la muerte a otro ser humano.[4] La Junta expresó que, la Ley de la Junta de Libertad Bajo Palabra y el Reglamento Núm. 9232, *supra*, proveen para que en toda evaluación del privilegio de libertad bajo palabra se examinen y consideren, entre otros, la totalidad del expediente criminal del confinado, la naturaleza y circunstancias del delito por los que se cumple la sentencia. Señaló que la Junta actuó de forma razonable dentro de su facultad discrecional para denegar el privilegio de libertad bajo palabra. Ello, dada la naturaleza cruel y violenta de los delitos que perpetró el confinado en contra de su esposa y de sus hijos, utilizando un machete con la consecuencia del fallecimiento de tres (3) de estos, mientras que la hija menor resultó gravemente herida. Señaló que este criterio resulta suficiente para proceder con la denegación de la libertad bajo palabra. En consecuencia, la Junta solicitó confirmar su decisión, por ser razonable, conforme a derecho y estar fundamentado en el expediente administrativo.

---

[4] Escrito en Cumplimiento de Resolución, apéndice págs. 9-11.

Luego de considerar los argumentos del recurrente, la oposición, a la luz de los hechos y el derecho aplicable, resolvemos confirmar la determinación recurrida.

En la Resolución cuya revisión se nos solicita, la Junta plasmó en las determinaciones de hechos aquellos aspectos que obraban a favor del recurrente. Entre ellos, reconoció que González Velázquez aceptó que cometió los delitos y se expresó arrepentido. Explicó que está cumpliendo con el plan institucional en custodia mínima y que tiene un plan de salida estructurado y viable en las áreas de vivienda, amigo consejero y empleo. La Junta reconoció que el recurrente cumplió con las terapias de Sección Programa Evaluación y Asesoramiento (SPEA) para el año 2021. De otro lado, la Junta también consideró la naturaleza violenta y las circunstancias crudas de los delitos cometidos, mediante los cuales asesinó a tres (3) personas inocentes.

Por tanto, en la Resolución que la Junta emitió el 23 de septiembre de 2024, el ente describió los factores que favorecieron al peticionario y los otros que no obraron a su favor. Con ello, decidió no conceder la libertad bajo palabra al considerar la magnitud del delito al darle muerte de forma abusiva a su esposa y dos (2) hijos menores de edad con un machete, lo que presentó factores de peligrosidad.

Así que, al realizar un análisis de los documentos ante nuestra consideración y la normativa aquí aplicable, disponemos que la decisión administrativa es adecuada. Está fundamentada en el *expertise* de la agencia, luego de realizar un balance entre los aspectos con los que cumplió el recurrente y la naturaleza del delito por los cuales cumple sentencia. Estos criterios están plasmados en el Artículo 3-D de la Ley Núm. 118, 4 LPRA sec. 1503d, que provee para que se tome en consideración la

naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia. También se requiere que se prepare y se considere el informe psiquiátrico.

En la Resolución que revisamos, la Junta le explicó al recurrente que considerará el caso nuevamente en octubre de 2025. En ese momento, el ente tendrá la oportunidad de evaluar el informe de ajuste y progreso con el plan de salida debidamente corroborado por el Departamento de Corrección incluyendo la evaluación psiquiátrica debidamente actualizada.

Por tanto, la determinación aquí recurrida resulta razonable, adecuada y conforme a Derecho, razón por la cual, procede confirmarla.

**IV.**

Por las razones antes expresadas, confirmamos la *Resolución* emitida por la Junta de Libertad Bajo Palabra.

Notifíquese a las partes y al miembro de la población correccional en cualquier institución donde este se encuentre.

Lo acordó y manda el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones