Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel VIII

| | | |
|---|---|---|
| JAN CARLOS OCASIO ROLDÁN<br>Recurrente<br><br>v.<br><br>JUNTA DE LIBERTAD BAJO PALABRA<br>Recurrida | KLRA202400706 | *Revisión Judicial* procedente de la Junta de Libertad Bajo Palabra<br><br>JLBP Núm. 147327<br><br>Sobre: Denegatoria de concesión Libertad bajo Palabras |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 6 de mayo de 2025.

Comparece el señor Jan Carlos Ocasio Roldán (señor Ocasio Roldán o recurrente), mediante recurso de revisión judicial, solicitando que revoquemos la *Resolución* emitida por la Junta de Libertad Bajo Palabra (JLBP), el 24 de junio de 2024. A través de dicho dictamen la JLBP determinó no conceder al recurrente la libertad bajo palabra.

Por los fundamentos que expondremos, hemos decidido revocar la *Resolución* recurrida, y, en consecuencia, ordenar la concesión del privilegio de libertad bajo palabra al señor Ocasio Roldán.

**I. Resumen del Tracto Procesal**

El 14 de enero de 2011, el señor Ocasio Roldán fue sentenciado a veinticinco (25) años de reclusión por la comisión de los siguientes delitos: asesinato en segundo grado, (Artículo 106 (c) de la Ley Núm. 149-2004, mejor conocida como, Código Penal del Estado Libre Asociado de Puerto Rico 2004,

33 LPRA sec. 4734)[1] y; portación de armas (Artículo 5.04 de la Ley Núm. 404-2000, mejor conocida como, Ley de Armas de 2000, 25 LPRA sec. 458c).[2]

Ya en estado de confinamiento, y luego de haber cumplido el término mínimo de la sentencia para ser elegible a la libertad bajo palabra, el 7 de febrero de 2023, la técnica social Vanessa Pagán León, del Departamento de Corrección y Rehabilitación, (DCR), preparó un *Informe breve para referir casos de sentencia por delito grave y menos grave ante la Junta de Libertad Bajo Palabra.* En el *Informe* se indicó, entre otras, que la parte recurrente: (1) completó terapias de control de impulsos; (2) no necesitaba terapias de patrones adictivos, según así lo había certificado el *Correctional Health Services*; (3) siempre ha arrojado negativo a las pruebas de dopaje; (4) ha participado en diversas salidas de la institución como parte del grupo teatral; (5) completó 550 horas en cursos de pastelería; (6) está ubicado en mínima custodia desde el 17 de julio de 2019; (7) obtuvo una licencia de artesano expedida por la *Compañía de Fomento del Departamento de Corrección*; (8) disfruta de pases familiares a la libre comunidad; (9) no ha incurrido querellas o informes negativos, y; (10) **posee un plan de salida completo en las áreas del hogar, oferta de empleo, amigo consejero y apoyo familiar**[3]. (Énfasis provisto).

Pasados unos meses, el 2 de mayo de 2023, la señora Zory L. Díaz López, técnica de servicios sociopenales del *Programa de la Comunidad del Departamento de Corrección* (técnica de servicios sociopenales Díaz López), preparó un *Informe de Libertad Bajo Palabra* sobre el recurrente, para la consideración de la JLBP. En este indicó que, desde el 13 de febrero de 2023, el recurrente: participa en el *Programa de pase extendido,* con monitoreo electrónico del Departamento de Corrección; **cuenta con plan de residencia**, (sobre el que brindó detalles); también tiene oferta de empleo; presentó una candidato para *Amigo y Consejero*; goza de buena reputación en la comunidad

---

[1] Código Penal vigente al momento de los hechos.
[2] Ley vigente al momento de los hechos.
[3] Apéndice del recurso de revisión judicial, págs. 1-11.

donde residen sus padres y; ha asistido a las citas con la técnica de servicios sociopenales de la Oficina de la Comunidad de Caguas del Departamento de Corrección.

Así las cosas, el 21 de febrero de 2024, **se celebró la *Vista de Consideración* ante la JLBP, con la presencia de la técnica de servicios sociopenales Díaz López**, y el señor Ocasio Roldán, quien compareció representado por su abogada.

Concluida la vista, el Oficial Examinador a cargo de esta, Leonardo Montalbán Colón (OE), preparó el correspondiente *Informe del Oficial Examinador* para la consideración de la JLBP. En dicho Informe, el OE enumeró las siguientes determinaciones de hechos:

> 1. El peticionario se encuentra cumpliendo una sentencia total de veinticinco (25) años por Asesinato en segundo grado y violación a la Ley de Armas. Tentativamente, cumple su sentencia el 11 de abril de 2028. La Junta de Libertad Bajo Palabra adquirió jurisdicción sobre su caso el 25 de noviembre de 2021.
>
> 2. El 26 de octubre de 2018, el peticionario completó terapias de Trastornos Adictivos ofrecido por DCR.
>
> 3. El 29 de junio de 2018, el peticionario culminó terapias de Aprendido a Vivir sin Violencia y el 29 de abril de 2015, completó terapias de Control de Impulso ofrecido por el DCR.
>
> 4. El 21 de enero de 2022, fue revaluado por el Programa de Evaluación y Asesoramiento (SPEA), con buenos ajustes.
>
> 5. El peticionario está clasificado en custodia mínima desde el 17 de julio de 2019, no cuenta con querella administrativa y actualmente se encuentra referido a trabajo en la Institución Correccional.
>
> 6. El peticionario **cuenta con propuesta de hogar, amigo consejero y oferta de empleo viables, según surge de la corroboración de información realizada por el programa de comunidad de Caguas**.[4] (Énfasis provisto).

En armonía con las determinaciones de hechos que encontró probadas, el OE concluyó que el señor Ocasio Roldán **reunía todos los requisitos para que se le otorgara el privilegio de la libertad bajo palabra**.

No obstante, contrario a la recomendación del OE, el 24 de junio de 2024, la JLBP emitió la *Resolución* recurrida, denegando la solicitud del

---

[4] Apéndice del recurso de revisión judicial, págs. 12-22.

privilegio de libertad bajo palabra a la parte recurrida. En su dictamen, la JLBP reprodujo las determinaciones de hechos enumeradas por el Oficial Examinador, salvo por la séptima, relativa al hogar viable del recurrente donde residir. En específico, la JLBP realizó las siguientes determinaciones de hechos:

1. El peticionario se encuentra cumpliendo una sentencia total de veinticinco (25) años por Asesinato en segundo grado y violación a la Ley de Armas. Tentativamente, cumple su sentencia el 11 de abril de 2028. La Junta de Libertad Bajo Palabra adquirió jurisdicción sobre su caso el 25 de noviembre de 2021.

2. El 26 de octubre de 2018, el peticionario completó terapias de Trastornos Adictivos ofrecido por DCR.

3. El 29 de junio de 2018, el peticionario culminó terapias de Aprendido a Vivir sin Violencia y el 29 de abril de 2015, completó terapias de Control de Impulso ofrecido por el DCR.

4. Debido a la naturaleza por el cual el peticionario se encuentra sentenciado le aplica la Ley 175-1998, según enmendada, en cuanto a la toma del ácido desoxirribonucleico (ADN), por lo cual el 8 de junio de 2016, le suministraron la toma de ADN requerida por ley.

5. El 21 de enero de 2022, fue revaluado por el Programa de Evaluación y Asesoramiento (SPEA), con buenos ajustes.

6. El peticionario está clasificado en custodia mínima desde el 17 de julio de 2019, no cuenta con querella administrativa y actualmente se encuentra referido a trabajo en la Institución Correccional.

**7. El peticionario no cuenta con propuesta de hogar viable para el proceso de rehabilitación en la libre comunidad, según surge de la corroboración de la información realizada por el Programa de Comunidad de Caguas del DCR**.

8. El peticionario cuenta con propuesta viable de amigo consejero y oferta de empleo viables, según surge de la corroboración de información realizada por el programa de comunidad de Caguas.

9. Para efectos de un análisis de la totalidad del expediente, se evaluó la opinión de las víctimas, así como la naturaleza y circunstancias de los delitos por los cuales cumple sentencia el peticionario.[5]

(Énfasis provisto).

A partir de tales determinaciones, la JLBP concluyó y resolvió lo siguiente:

---

[5] Apéndice del recurso de revisión judicial, págs. 24-27.

[…]

**De la documentación <u>que obra en el expediente</u> surge que el peticionario cuenta con los ajustes pertinentes dentro de la Institución Correccional. Sin embargo, no cuenta con propuesta de hogar viable para el proceso de rehabilitación en la libre comunidad. Por lo cual no dispone de un plan de salida debidamente estructurado y viable en una de sus tres (3) áreas de salidas.**

Tomando en consideración todos los factores del presente caso, consideramos que el peticionario no cualifica para beneficiarse del privilegio de libertad bajo palabra.

(Énfasis y subrayado provistos)[6].

La JLBP añadió que volvería a considerar el caso en febrero del 2025.

Inconforme, el 26 de agosto de 2024, el señor Ocasio Roldán presentó una *Moción de Reconsideración* ante la JLBP. En síntesis, tildó de incorrecto e injustificado que la JLBP le negara el privilegio de libertad bajo palabra bajo el fundamento de que la vivienda propuesta no era viable. Esto, debido a que **en el *Informe de Libertad Bajo Palabra* se corroboró la viabilidad de la vivienda propuesta**. Además, afirmó que, **del mencionado informe, no surgía ningún elemento o dato que sustentara la determinación de la JLBP**.

Ante ello, el 5 de septiembre de 2024, la JLBP emitió una *Resolución* acogiendo la *Moción de Reconsideración,* aunque para decidirla en sus méritos en fecha posterior.

Transcurrido el término legal que tenía la JLBP para resolver la *Moción de Reconsideración,* sin que tomara acción sobre ella, el señor Ocasio Roldán acudió ante nosotros el 26 de diciembre de 2024, mediante el presente recurso de revisión judicial. En su escrito, señaló el siguiente error:

INCURRIÓ LA JUNTA DE LIBERTAD BAJO PALABRA EN UN PATENTE ABUSO DE DISCRECIÓN AL DENEGAR LA CONCESIÓN DE LIBERTAD BAJO PALABRA AL AQUÍ RECURRENTE CUANDO DICHA DECISIÓN NO ESTÁ BASADA EN FORMA ALGUNA EN EVIDENCIA ENCONTRADA EN EL EXPEDIENTE DEL CASO, CONSTITUYENDO A SU VEZ UNA ABIERTA VIOLACIÓN AL DEBIDO PROCESO DE LEY.

---

[6] *Íd.*

En respuesta, el 10 de enero de 2025 emitimos una *Resolución* concediéndole a la parte recurrida el término de quince (15) días para exponer su posición.

El 28 de enero de 2025, la JLBP, representada por la Oficina del Procurador General de Puerto Rico (el Procurador), presentó un *Escrito en Cumplimiento de Resolución.* En este solicitó que ordenáramos la devolución del asunto a la agencia recurrida para una nueva evaluación sobre la viabilidad del hogar propuesto, en atención a cierta información confidencial contenida en el expediente, referente a la presunta cercanía de la residencia de la víctima con dicho hogar. Añadió, que el caso del recurrente se estaría evaluando nuevamente en febrero de 2025, dando especial atención a la viabilidad del hogar propuesto, en vista de que el expediente contiene una dirección cuya procedencia no queda clara, y existe correspondencia enviada a la parte perjudicada que fue devuelta por el correo.

A raíz de ello, el 3 de febrero de 2025, el señor Ocasio Roldán presentó una *Réplica Urgente a Escrito en Cumplimiento de Orden.* En esta sostuvo que: 1) aun siendo confidencial la información aludida, esta estuvo accesible al OE que recomendó la concesión del beneficio al señor Ocasión Roldan; 2) **el recurrente lleva dos (2) años residiendo en el mismo hogar que propuso, como parte del programa de pase extendido con monitoreo electrónico**; 3) la JLBP erró en la aplicación de su reglamento, ya que este exige que si una notificación a la parte perjudicada es devuelta, la JLBP tiene que certificar el cumplimiento con la notificación y continuar con el procedimiento sin la participación de la víctima y; 4) que no procedía devolver el caso a la agencia, pues tal acción propuesta surtiría el efecto de un proceso de reconsideración, casi un año de tomada la determinación por la JLBP de no conceder el privilegio, y luego de que el señor Ocasio Roldan tuviera que recurrir a este foro. Por todo ello, reiteró que lo que procedía era la revocación de la *Resolución*, **pues la determinación de la JLBP no estuvo basada en evidencia real y encontrada en el expediente**. (Énfasis provisto).

Examinados tales escritos, emitimos una *Resolución* el 12 de marzo de 2025, requiriéndole al Procurador que informara el resultado de la evaluación presuntamente pautada para febrero de 2025.

Según ordenado, el Procurador presentó una *Moción en Cumplimiento de Resolución,* informando que la JLBP reconsideró el caso del recurrente el 20 de marzo de 2025, y en esa misma fecha remitió a la Secretaría de la JLBP un borrador de resolución donde incluía sus recomendaciones sobre la concesión o denegatoria del privilegio de libertad bajo palabra, el cual nos compartió

## II. Derecho Aplicable

### A. Revisión Judicial

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, dispone el alcance de la revisión judicial de las determinaciones de las agencias. Tanto la referida ley, como la jurisprudencia aplicable, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por ley, y si la misma es legal y razonable. *T–JAC v. Caguas Centrum Limited*, 148 DPR 70, 80 (1999). Por esto, los tribunales apelativos han de conceder gran deferencia y consideración a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado. *Graciani Rodríguez v. Garage Isla Verde, LLC; Mercedes Benz USA, LLM; Mercedes Benz Financial Services US, LLC*, 202 DPR 117, 126 (2019); *Mun. de San Juan v. Plaza Las Américas*, 169 DPR 310, 323 (2006).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será la razonabilidad en la actuación de la agencia. *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc.*, 161 DPR 69, 76 (2004). Conforme a la cual, habrá que determinar si la actuación de la agencia fue arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. De San Juan v. CRIM*, 178 DPR 164, 175 (2010).

A pesar de que lo anterior, lo cierto es que nuestro Tribunal Supremo ha identificado circunstancias en que corresponde no observar la referida deferencia a las resoluciones finales administrativas. En específico, dicho alto foro ha reconocido que la referida deferencia a las determinaciones administrativas cederá cuando: (1) **la decisión no está basada en evidencia sustancial**; (2) el organismo administrativo ha errado en la aplicación de la ley, y (3) ha mediado una actuación irrazonable o ilegal. (Énfasis provisto). *Oficina de Ética Gubernamental v. Martínez Giraud*, 210 DPR 79 (2022); *Acarón, et al v. D.R.N.A.,* 186 DPR 564, 584 (2012)*; Costa Azul v. Comisión*, supra pág. 852.

*Evidencia sustancial* ha sido definida jurisprudencialmente como aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. **Sin embargo, esta acepción no podrá estar sostenida por un ligero destello de evidencia o por simples inferencias**. Así, el criterio rector en estos casos siempre estará guiado por la **razonabilidad** de la determinación administrativa luego de considerar el **expediente administrativo en su totalidad**. *Oficina de Ética Gubernamental v. Martínez Giraud*, supra.

### B. Junta de Libertad Bajo Palabra

El sistema de libertad bajo palabra está regulado por la Ley Núm. 118 del 22 de julio de 1974, conocida como la *Ley de la Junta de Libertad Bajo Palabra*, 4 LPRA sec. 1501, *et seq* (Ley Núm. 118-1974). De su articulado surge que, *se permite que una persona que haya sido convicta y sentenciada a un término de reclusión cumpla la última parte de su sentencia fuera de la institución penal, sujeto a las condiciones que se impongan para conceder la libertad. Rivera Beltrán v. J.L.B.P.,* 169 DPR 903, 918 (2007).

El propósito de esto es hacer viable la consecución de la política pública enunciada en la Constitución del Estado Libre Asociado de Puerto Rico, a los efectos de que se propenderá al tratamiento adecuado de los convictos para hacer posible su rehabilitación moral, social y económica. *Véase,* Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico.

La decisión de conceder o denegar los beneficios de libertad bajo palabra descansa en la entera discreción de la JLBP, y no existe un derecho a obtener tal beneficio. *Maldonado Elías v. González Rivera,* 118 DPR 260, 275-76 (1987), puesto que se razona que mientras disfrutan de estos beneficios están técnicamente en reclusión. *Pueblo v. Negrón Caldero,* 157 DPR 413, 420 (2002).

Según el Artículo 3-D de la Ley Núm. 118, la JLBP tomará en consideración los siguientes criterios para considerar la concesión del privilegio:

(1) La naturaleza y circunstancias del delito o delitos por los cuales cumple sentencia.

(2) Las veces que el confinado haya sido convicto y sentenciado.

(3) Una relación de liquidación de la sentencia o sentencias que cumple el confinado.

(4) La totalidad del expediente penal, social, y los informes médicos e informes por cualquier profesional de la salud mental, sobre el confinado.

(5) El de ajuste institucional y del social y psicológico del confinado, preparado por la Administración de Corrección y el médico y psiquiátrico preparado por Salud Correccional del Departamento de Salud.

(6) La edad del confinado.

(7) El o los tratamientos para condiciones de salud que reciba el confinado.

(8) La opinión de la víctima.

(9) Planes de estudios, adiestramiento vocacional o estudio y trabajo del confinado.

**(10) Lugar en el que piensa residir el confinado y la actitud de dicha comunidad, de serle concedida la libertad bajo palabra.**

(11) Cualquier otra consideración meritoria que la Junta haya dispuesto mediante reglamento. La Junta tendrá la discreción para considerar los mencionados criterios según estime conveniente y emitirá resolución escrita con determinaciones de hechos y conclusiones de derecho. (Énfasis provisto). 4 LPRA sec. 1503d.

Cónsono con lo anterior, para implantar las disposiciones de su ley habilitadora, la JLBP adoptó, el 18 de noviembre de 2020, el Reglamento 9232, *Reglamento de la Junta de Libertad Bajo Palabra* (Reglamento Núm.

9232)[7]. La sección 10.1 de dicho Reglamento igualmente dispone los criterios que la JLBP deberá considerar al evaluar una solicitud de libertad bajo palabra. Entre tales criterios se encuentran los siguientes:

(1) Historial delictivo;

(2) Una relación de liquidación de la(s) sentencia(s) que cumple el peticionario;

(3) La clasificación de custodia, el tiempo que lleva en dicha clasificación y si hubo cambio de clasificación y las razones para ello;

(4) La edad del peticionario;

(5) La opinión de la víctima;

(6) El Historial Social;

(7) **Si cuenta con un plan de salida estructurado y viable en las áreas de oferta de empleo y/o estudio, residencia y amigo consejero**;

(8) Historial de Salud;

[...]

(12) La Junta tendrá discreción para considerar los mencionados criterios según considere conveniente y cualquier otro meritorio con relación a la rehabilitación del peticionario y al mejor interés de la sociedad. (Énfasis provisto). Sección 10.1 del Art. X del Reglamento Núm. 9232.

En lo que nos concierne, surge del referido Reglamento que, como parte de la evaluación del plan de salida estructurado, la JLBP **deberá examinar la viabilidad de la vivienda propuesta**. (Énfasis provisto). Sección 10.1 del Reglamento Núm. 9232. A su vez, dentro de las consideraciones acerca de la viabilidad de la vivienda propuesta deberá sopesarse, si esta "está relativamente cercana a la residencia de la victima del delito". Sección 10.1 (B)(7)(e)(V)(d) del Reglamento Núm. 9232[8].

Estrechamente relacionado con lo anterior, el mismo Reglamento dispone, en su Sección 8.3, el requisito de notificación a las víctimas sobre el proceso de concesión de libertad a prueba, reconociéndole una serie de derechos. Por tanto, cuando un caso es referido a la consideración de la JLBP

---

[7] El Reglamento Núm. 9232 fue derogado por el Reglamento Núm. 9603 de 25 de septiembre de 2024. No obstante, lo continuamos citando en este caso por cuanto a la fecha en que fue evaluado el recurrente, y emitida la Resolución recurrida, era el que estaba vigente.
[8] En el Reglamento Núm. 9603 que está vigente, los derechos de las víctimas están contenidos en las Secciones 8.1 a la 8.3.

resulta necesario hacer esfuerzos por notificar a la víctima sobre ello. En cuanto a la debida notificación a la víctima, la reglamentación requiere que, cuando se desconozca la información de contacto de la parte afectada, esta será notificada mediante edicto en un periódico de circulación general. Sección 8.3 (C) del Reglamento Núm. 9232. En la alternativa, en los casos que la JLBP cuente con la información de contacto, la notificación se hará por correo regular a la última dirección postal conocida de la víctima. **De esta ser devuelta, "el secretario de la Junta procederá a certificar el cumplimiento con la notificación y se continuará con el procedimiento sin la participación de la víctima"**. (Énfasis provisto). Sección 8.3 (E)(4), Reglamento Núm. 9232.

## III. Aplicación del Derecho a los hechos

Del recuento procesal efectuado debe haber quedado claramente establecido que la JLBA denegó conceder la libertad bajo palabra al recurrente, por el siguiente fundamento:

> 7. *El peticionario* [aquí recurrente] ***no cuenta con propuesta de hogar viable para el proceso de rehabilitación en la libre comunidad***, *según surge de la corroboración de información realizada por el Programa de Comunidad de Caguas del DCR*[9]. (Énfasis provisto).

Es decir, el anterior constituyó **el único fundamento** esgrimido por la JLBP para denegar el beneficio de la libertad bajo palabra al recurrente.

No pasa por inadvertido que la JLBP llegó a tal conclusión, a pesar de contar con, al menos, dos informes preparados por personal del DCR en los que se afirmó lo contrario a lo decidido, es decir, que el recurrente sí poseía un plan de salida completo en lo referente al hogar, oferta de empleo, amigo consejero y apoyo familiar. Con mayor precisión, los *Informes* suscritos por la técnica social Pagán León, y la técnica sociopenal Díaz López, de 7 de febrero y 2 de mayo de 2023, respectivamente, establecieron que, además del recurrente cumplir con todos los demás requisitos para que se le concediera la libertad bajo palabra, en específico, poseía un plan de salida completo, lo

---

[9] Apéndice del recurso de revisión judicial, pág. 24.

que incluía el lugar donde residiría, el cual ya estaba siendo utilizado para los pases a la comunidad. Al examinar, por ejemplo, el *Informe* presentado por la técnica sociopenal Díaz López, surge de allí información particularizada sobre la residencia y el hogar propuesto, con entrevista al padre y a personas de la vecindad[10].

No conforme con lo anterior, en este caso fue celebrada una vista ante un Oficial Examinador el 21 de marzo de 2024, en la cual, luego de presentada la prueba pertinente, se determinó que el recurrente reunía todos los requisitos para que se le otorgara la libertad bajo palabra, y específicamente se incluyó en las determinaciones de hechos que este contaba *con propuesta de hogar seguro, amigo consejero y oferta de empleo viables,* ***según surge de la corroboración de información realizada por el programa de comunidad de Caguas***[11]. (Énfasis provisto).

Véase que la conclusión del Oficinal Examinador se encuentra frontalmente opuesta a la determinación de la JLBP sobre dos asuntos: 1) la presunta falta de hogar viable donde cumplir la libertad bajo palabra; y 2) la supuesta información brindada por el *Programa de Comunidad de Caguas* acerca de dicho hogar viable. Es decir, mientras que el Oficial Examinador, ante quien se desfiló la prueba, concluyó que la información brindada por el *Programa de Comunidad Caguas* **confirmó** que el recurrente contaba con un hogar viable, la JLBP adujo que, por información de ese mismo *Programa*, el recurrente no contaba con un hogar viable. Claro está, el asunto es sencillo, o el *Programa de Comunidad Caguas* confirmó que el recurrente contaba con un hogar viable, o concluyó lo opuesto, pero lo que no podemos conceder es que hubiese llegado a conclusiones diametralmente opuesta sobre el mismo hecho. En cualquiera de los casos, tocaba al expediente administrativo revelar la contestación sobre uno o el otro, pero en este nada encontramos que sostenga la postura de la JLBP.

---

[10] Apéndice del recurso de revisión judicial, págs. 12-15.
[11] Apéndice del recurso de revisión judicial, pág. 16.

Por lo descrito, no sorprende que el recurrente hubiese planteado en su recurso de revisión judicial que la determinación de la JLBP, al denegar la libertad bajo prueba, no estuvo sostenida por evidencia sustancial contenida en el expediente administrativo, convirtiendo la *Resolución* recurrida en arbitraria, y por ello, revocable. En este sentido, el recurrente aseveró que la prueba que obra en el expediente lo que realmente sostenía era: que cumplía con todos los requisitos para disfrutar de la libertada bajo prueba; y que ese cumplimiento incluyó específicamente contar con un hogar viable donde residir.

Ante el cuadro descrito, esperábamos que el Procurador, a través de su escrito, nos pusiera en posición de sopesar aquella información que surgiera del expediente administrativo, a fines de establecer que el recurrente verdaderamente no contaba con un hogar viable que hiciera posible la concesión de la libertad bajo palabra. Sin embargo, al abordar este asunto en su *Escrito en cumplimiento de resolución*, el Procurador esgrimió que, la parte perjudicada ***aparenta*** *residir cerca del hogar propuesto por el recurrente, y,* ***cabe la posibilidad*** *real de que ambas residencias estén relativamente cercanas como para denegar el privilegio*[12]. (Énfasis provisto). Añadió como causa adicional que, *existe correspondencia enviada a la parte perjudicada la cual fue devuelta por el correo*[13].

Como se nota, según tal argumentación, la negativa de la JLBP a conceder dicho privilegio al recurrente por presuntamente no tener un hogar viable encuentra como único sostén **meras conjeturas**, de ahí que en la oración que precede ennegreciéramos el *aparente* y *cabe la posibilidad,* con los cuales se revela el carácter puramente especulativo de lo dicho. Nótese en ello que hay una absoluta ausencia de indicación sobre el documento o la fuente que se utiliza para sostener tales especulaciones. Tampoco pasa inadvertida la ausencia de mención de la presunta información proveniente

---

[12] *Escrito en cumplimiento de resolución* presentado por el Procurador, pág. 14.
[13] *Id.*

del *Programa de Comunidad Caguas,* como fuente para negar que el recurrente contara con un hogar viable.

Además, la documentación provista por el Procurador a este foro intermedio mediante su *Moción en cumplimiento de resolución* de 28 de marzo de 2025, reitera la ausencia de evidencia de la JLPB para denegar la concesión de la libertad bajo palabra. Veamos.

Con referencia a la presunta falta de notificación a la parte perjudicada sobre los procesos seguidos, la documentación ante nuestra consideración lo que deja establecido es que la JLBP llevó a cabo los pasos que reglamentariamente les correspondía tomar para notificar a la víctima. Así, le envío una comunicación a la víctima a su última dirección postal, el 27 de diciembre de 2023, aunque resultó devuelta por el correo el 2 de enero de 2024, hecho que se recogió en una *Certificación,* con fecha de 10 de abril de 2024[14]. Luego, el 10 de abril de 2024, le hizo una llamada telefónica a la víctima a su último número conocido, pero estaba fuera de servicio[15]. Asimismo, la JLBP trató de comunicar a la víctima del proceso mediante edicto, según este fue publicado el 19 de abril de 2024[16]. Finalmente, se emitió otra *Certificación,* el 14 de mayo de 2024, en la cual se indicó que, posterior a la publicación del edicto, no se recibió comunicación alguna de la parte perjudicada[17].

Por tanto, agotadas las alternativas que el Reglamento 9232 dispone seguir a la JLBP para notificar a la víctima del proceso, el propio reglamento manda que, ***se continuará con el procedimiento sin la participación de la víctima****.* Sección 8.3 (E)(4), Reglamento Núm. 9232.

Con todo, resulta de la mayor importancia en este asunto dejar constancia de que, según un informe suscrito por la técnica de servicios

---

[14] Apéndice confidencial del *Escrito en Cumplimiento de Resolución* presentado por el Procurador el 28 de enero de 2025, pág. 11.

[15] Apéndice confidencial del *Escrito en Cumplimiento de Resolución* presentado por el Procurador el 28 de enero de 2025, pág. 16.

[16] Apéndice confidencial del *Escrito en Cumplimiento de Resolución* presentado por el Procurador el 28 de enero de 2025, pág. 10.

[17] Apéndice confidencial del *Escrito en Cumplimiento de Resolución* presentado por el Procurador el 28 de enero de 2025, pág. 9.

sociopenales Díaz López, del 2 de mayo de 2023, la víctima en este caso **se había comunicado con la JLBP en varias ocasiones, incluyendo por escrito, <u>indicando que no se oponía a que el señor Ocasio Roldan se beneficiara de la libertad bajo palabra</u>**[18]. Es decir, que, si la preocupación de la JLBP al denegar la libertad bajo palabra al recurrente partía de su obligación por velar por los intereses de la víctima, la información del expediente lo que revela es que, hizo todo lo posible por notificarle del asunto, aunque ello resultó infructuoso, pero, de todas maneras, esta no se oponía a la concesión de dicho privilegio al recurrente.

En definitiva, concluimos que, examinada la documentación que compone el expediente administrativo, este contenía *evidencia sustancial* para sostener que el recurrente cumplía con todos los elementos para que se le concediera la libertad bajo palabra. Por el contrario, no hemos encontrado evidencia alguna que sostenga la conclusión de la JLBP de que el recurrente no contaba con un hogar viable para su proceso de rehabilitación. La especulación impulsada por el Procurador en términos de que la parte perjudicada ***aparenta*** *residir cerca del hogar propuesto por el recurrente, y,* ***cabe la posibilidad*** *real de que ambas residencias estén relativamente cercanas como para denegar el privilegio,* es el tipo de *ligero destello de evidencia* o *simple inferencia,* que nuestro Tribunal Supremo ha advertido no puede sostener una determinación administrativa. *Oficina de Ética Gubernamental v. Martínez Giraud*, supra. Es decir, no podemos sostener que la JLBP contara con *evidencia sustancial* para denegar la libertad bajo palabra al recurrente, pues carecía de evidencia relevante que una mente razonable pudiera aceptar como adecuada para sostener tal conclusión.

Siendo el criterio rector para este Tribunal de Apelaciones al revisar las determinaciones finales administrativas uno de **razonabilidad** al sopesar el **expediente administrativo en su totalidad**, por las razones expuestas, decidimos que la denegatoria de la libertad bajo palabra al recurrente en este

---

[18] Apéndice confidencial del *Escrito en Cumplimiento de Resolución* presentado por el Procurador el 28 de enero de 2025, pág. 17.

caso por la JLBP fue irrazonable, por falta de evidencia sustancial que la sostuviera.

## IV. Parte dispositiva

Por los fundamentos expuestos, los que hacemos formar parte del presente dictamen, *revocamos* la *Resolución* emitida el 24 de junio de 2024 por la JLBP. A tenor, ordenamos la inmediata concesión del privilegio de libertad bajo palabra al señor Ocasio Roldan.

Notifíquese inmediatamente.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones