Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| JOSÉ FEBRES FEBRES<br><br>Recurrente<br><br>V.<br><br>INSTITUCIÓN CORRECCIONAL BAYAMÓN 501<br><br>Recurrido | TA2025RA00376 | *Revisión de Decisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.:<br>B-104-25<br><br>Sobre:<br>Solicitud de Tratamiento Médico |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## SENTENCIA

En San Juan, Puerto Rico, a 13 de enero de 2026.

El 14 de noviembre de 2025, el señor José Febres Febres (en adelante, señor Febres Febres o parte recurrente) presentó ante este Tribunal de Apelaciones por derecho propio, o *In Forma Pauperis*, recurso de revisión judicial.[1] En su escrito intitulado *Revi[s]ión Judicial de Decisión Administrativa,* la parte recurrente nos solicita que revisemos la *Resolución* emitida el 6 de octubre de 2025 por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (en adelante División de Remedios Administrativos o parte recurrida). En virtud de esta, la parte recurrida confirmó y modificó la *Respuesta del [Á]rea Concernida/Superintendente.*

Por los fundamentos que adelante se esbozan, se *confirma* la resolución recurrida.

---

[1] Según se desprende del escrito, el mismo fue suscrito por el señor Febres Febres el 4 de noviembre de 2025, por lo cual, damos por presentado el recurso en dicha fecha.

**I**

Según se desprende del expediente, el señor Febres Febres presentó una *Solicitud de Remedio Administrativo* con número de identificación B-100425. En el aludido petitorio, la parte recurrente solicitó que no se le aplicara la Ley Núm. 85-2022, *infra*, al cómputo de su pena, ya que, a su juicio, no le beneficiaba.

Más adelante, fue emitida la *Respuesta del [Á]rea Concernida/Superintendente*. Por medio de esta, la parte recurrida dispuso lo siguiente:

> La Ley 85 se aplicó según las instrucciones impartidas el 11 de octubre de 2023, para dar el beneficio de la preventiva y [é]l empieza a cumplir a ese único mínimo y que estuviera más cerca de la jurisdicción de la JLBP. En su caso, antes de la Ley 85 su mínimo se encontraba para el 8 de noviembre 2025 y luego de aplicar la Ley 85 su mínimo es 8 de julio de 2022 ya cumplido.

En desacuerdo, la parte recurrente presentó *Solicitud de Reconsideración* donde reiteró su postura inicial.

Finalmente, la parte recurrida emitió la *Resoluci[ó]n* cuya revisión nos atiene. En primer lugar, la División de Remedios Administrativos esbozó las siguientes determinaciones de hechos:

1. El recurrente present[ó] Solicitud de Remedios Administrativos el 2 de julio de 2025 ante el Evaluador de Remedios Administrativos, Maribel García Charriez de la Oficina de Bayamón. En su escrito solicita que no se le aplique la Ley 85-2022.

2. El 2 de julio de 2025 se hizo Notificación dirigida a la Sra. Nahiomy Gilbes Maldonado, Supervisora Récord Criminal, Institución Correccional Bayamón 501.

3. El 22 de julio de 2025 se recibió respuesta por parte de la Sra. Nahiomy Gilbes Maldonado, Supervisora Récord Criminal, Institución Correccional Bayamón 501.

4. Se realiza respuesta por parte de la Sra. Maribel García Charriez, Evaluadora de Remedios Administrativos Oficina de Bayamón el 22 de julio de 2025.

5. El 1 de agosto de 2025 se hace la entrega al recurrente del Recibo de Respuesta.

6. El 11 de agosto de 2025, el recurrente inconforme con la respuesta emitida, presentó Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguye que no está de acuerdo con la respuesta recibida.

7. Se acoge reconsideración el 25 de agosto de 2025.

Finalmente, la parte recurrida determinó que, la Ley Núm. 85-2022 fue aplicada "según fue dictada". A tales efectos, confirmó y modificó la *Respuesta del [Á]rea Concernida/Superintendente.*

En desacuerdo con lo determinado, la parte recurrente acudió ante este foro revisor y esgrimió los siguientes señalamientos de error:

- Errór [sic] la Sra. Damari Roble[s] Domínguez Co[o]rdinadora Regiona[l] de la División de Remedios Administrativo[s] de la Administración de Correc[c]ión y Re[h]habilitación al confirmar la Respuesta emitida por la supervisora de R[é]cord Nahiomy Gilber Ma[l]donado al aplicar la Ley 85 retroa[c]tivamente sentencia de 6 años que ya había sido cumplida por ley de arma[s].

- Error [sic] la Sra. Damari Robles Domínguez Co[o]rdinadora Regiona[l] de la División de Remedios Administrativo[s] de la Administración de Correc[c]ión y Re[h]abilitación el [sic.] co[n]firmar la Respuesta emitida por la supervisa [sic] de R[é]cord Nahiomy Gilber Maldonado el volver a poner a cumplir al recurrente la pena de 6 años por ley de arma[s].

Mediante *Resolución* emitida el 9 de diciembre de 2025, le ordenamos a la parte recurrida exponer su posición en o antes del miércoles 7 de enero de 2026. Le apercibimos que, transcurrido el término dispuesto, se tendría por perfeccionado el recurso para su adjudicación final.

El 7 de enero de 2026, la parte recurrida presentó *Escrito en Cumplimiento de Resolución.*

Con el beneficio de la comparecencia de las partes, procedemos a resolver.

## II

### A. Estándar de Revisión Judicial de Determinaciones Administrativas

De ordinario los tribunales apelativos debemos otorgar deferencia y respeto a las conclusiones e interpretaciones hechas por las agencias administrativas.[2] *Vázquez v. Consejo de Titulares*, 2025 TSPR 56 (2025); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Pérez López v. Depto. Corrección*, 208 DPR 656, 672 (2022); *Super Asphalt v. AFI y otros*, 206 DPR 803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019). No obstante, tal norma no es absoluta, es por lo que, nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. De igual manera, la más Alta Curia ha expresado que, la consideración otorgada por los tribunales no equivale a una renuncia de nuestra función revisora. *Vázquez v. Consejo de Titulares*, supra.

En *Torres Rivera v. Policía de Puerto Rico*, supra, pág. 628, nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la forma siguiente:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero tal deferencia cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales.[3]

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra,

---

[2] *Rolón Martínez v. Supte. Policía*, 201 DPR 26,35 (2018); *Torres Rivera v. Policía de PR*, 196 DPR 606, 626 (2016).
[3] Véase *Super Asphalt v. AFI y otros*, supra, págs. 819-820.

pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se debe dirimir si la agencia actuó de forma arbitraria o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*; *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros*, supra, pág. 819-820.[4]

Bajo este supuesto, la Sec. 4.5 de la Ley Núm. 38 del 30 de junio de 2017, 3 LPRA 9675, conocida como la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), "estableció el marco de revisión judicial de las agencias administrativas". *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.* págs. 35-36; *OEG v. Martínez Giraud*, supra, pág. 90*; Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Nobbe v. Jta. Directores*, supra, pág. 217; Sec. 4.5 de la LPAU, 3 LPRA sec. 9675.

Las determinaciones de hechos contenidas en las decisiones de las agencias, podrán ser sostenidas por el tribunal cuando estén basadas en evidencia sustancial que obra en el expediente administrativo. Mientras que, conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675; *Vázquez v. Consejo de Titulares*, supra; *OEG v. Martínez Giraud,* supra, pág. 90; *Super Asphalt v. AFI y otros,* supra, pág. 819-820.

---

[4] *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Rolón Martínez v. Supte. Policía,* supra, pág. 36; *Batista, Nobbe v. Jta. Directores*, pág. 216.

Los foros revisores podrán apoyarse en las interpretaciones de las agencias. Sin embargo, dichas interpretaciones "constituyen un acervo de experiencias y criterios informados a los cuales los tribunales y los litigantes bien podrán recurrir a modo de guía" y no avalar irreflexivamente, como se hacía en el pasado. *Vázquez v. Consejo de Titulares*, supra. En casos administrativos el tribunal deberá realizar su tarea con un "*body of experience and informed judgment*" de la agencia, entre otra información a su disposición. *Íd.* De igual manera, los tribunales deberán ejercer un juicio independiente al decidir si una agencia ha actuado dentro del marco de sus facultades estatutarias. *Íd.*

### B. Privilegio de Libertad Bajo Palabra

El sistema de libertad bajo palabra se encuentra reglamentado por la Ley Núm. 118 de 22 de julio de 1974, según enmendada, 4 LPRA secc. 1501 *et seq.* La libertad bajo palabra permite que, una persona que hubiese sido sentenciada a un término de reclusión cumpla la última parte de su sentencia fuera de la institución penal, sujeto a las condiciones que se impongan para conceder dicha libertad. *Benítez Nieves v. ELA et al.*, 202 DPR 818, 825 (2019). Este beneficio tiene el propósito principal de ayudar a los confinados a reintegrarse a la sociedad. 4 LPRA secc. 1503. Además, es un componente del proceso de rehabilitación del confinado. Se considera que mientras disfrutan del mismo están, técnicamente, extinguiendo su condena. *Rivera Beltrán v. JLBP*, 169 DPR 903, 918 (2007) (Sentencia) (Opinión Concurrente de la Juez Asociada Señora Rodríguez Rodríguez).

Ahora bien, la libertad bajo palabra no constituye un derecho a reclamarse, sino que se trata de un privilegio legislativo que descansa en la entera discreción de la JLBP. *Pueblo v. Negrón Caldero*, 157 DPR 413, 420 (2002); *Maldonado Elías v. González Rivera*, 118 DPR 260, 275-276 (1987). En ese sentido, la JLBP podrá

imponer las condiciones que entienda necesarias al conceder este privilegio. 4 LPRA secc. 1503; *Benítez Nieves v. ELA et al.*, supra. Lo que implica que, el que goce de dicho privilegio tendrá una libertad cualificada. *Íd.* Las condiciones a imponerse, restringen las actividades del liberado más allá de las restricciones comunes que se le imponen por ley a cada ciudadano. *Íd.* Véase también, *Morrissey v. Brewer*, 408 US 471, 478 (1972).

La Ley Núm. 118-1974, *supra*, ha sufrido un sinnúmero de enmiendas, con el fin de expandir la jurisdicción de la JLBP y dar paso a que más personas confinadas puedan beneficiarse del privilegio de libertad bajo palabra.

De esta manera, se cumple con la política pública constitucional de la rehabilitación que debe traducirse en un andamiaje penal más humano en la implementación de las penas. Véase, *Exposición de Motivos* de la Ley Núm. 85 de 11 de octubre de 2022 (en adelante, Ley Núm. 85-2022).

La primera enmienda significativa ocurrió con la aprobación de la Ley Núm. 85-2022, *supra*. Por medio de esta, quedó enmendado el Artículo 3 de la Ley Núm. 118-1974, *supra*, así como el Artículo 308 del Código Penal de Puerto Rico, 33 LPRA § 5416. A grandes rasgos, los cambios implementados incluyeron unos parámetros más amplios para que las personas confinadas pudieran ser consideradas para el privilegio de libertad bajo palabra, ello según los delitos cometidos y las penas impuestas. Dichas modificaciones aplicaban de manera retroactiva, independientemente del código penal o la ley penal vigente al momento de los hechos constitutivos de delito, siempre y cuando resultaran favorables para la persona confinada.

No obstante, posteriormente se aprobó la Ley Núm. 85-2024, *supra*, a los fines de aclarar y delimitar el alcance de la aprobada Ley Núm. 85-2022, *supra*. Mediante las nuevas enmiendas, se

dispuso que el cómputo del tiempo mínimo para ser elegible para el privilegio de libertad bajo palabra no sería aplicable a ciertas personas, dependiendo el delito cometido.

### i. *Carta Circular Núm. 2023-02*

El 15 de junio de 2023, el Departamento de Corrección y Rehabilitación emitió la Carta Circular Núm. 2023-02 donde expuso el procedimiento a seguir sobre el cumplimiento de la Ley Núm. 85-2022, *supra*. En específico, esbozó el procedimiento a llevar a cabo a la hora de evaluar el computo de sentencias de la población correccional aplicando las disposiciones de la Ley Núm. 85-2022, *supra*. Dicho procedimiento es el siguiente:

1. Verificarán todos los expedientes criminales de toda la población correccional.

2. Evaluarán el documento titulado "Hoja de Control sobre Liquidación de Sentencias". De observar más de un término computado, identificarán la sentencia base mayor.

3. Tomarán en cuenta las sentencias de manera individual. Las sentencias que son consecutivas no deberán estar consolidadas en la nueva revisión. De estar consolidadas, el resultado conllevaría a identificar una pena mayor que no necesariamente sea la correcta para el cómputo final a los fines requeridos por la ley.

4. Los nuevos cómputos se harán en una nueva "Hoja de Control sobre Liquidación de Sentencia", la cual se identificará como una "Reliquidación".

5. En virtud de lo anterior, en la nueva "Hoja de Control sobre Liquidación de Sentencia", identificarán la pena mayor, y se observará el mínimo de esa sentencia. en el caso de que el mínimo sea mayor de 15 años, se atemperará a 15 años, salvo en los casos sentenciados por asesinato en primer grado, que el mínimo será de 25 años naturales.

6. Computarán en primer orden la pena mayor con el mínimo. Cuando el mínimo de la pena mayor sea menor de 15 años, no se efectuará cómputo adicional. Solo se pondrá en primer orden.

7. Todo delito cumplido en su totalidad (máximo y mínimo) será eliminado de la Hoja de Liquidación de Sentencia.

8.  Adjudicarán las bonificaciones adicionales al nuevo cómputo en el máximo y en el mínimo, exceptuando los casos de asesinato en primer grado, que solo bonifican el máximo.

9.  Si el delito de la pena mayor (primer orden) excluye las bonificaciones adicionales no podrán ser acreditadas, aunque el confinado tenga tiempo adjudicado por concepto de trabajo y/o estudios.

10. Computarán los demás términos de las sentencias consecutivas en el mismo orden de la hoja de liquidación anterior y no se computarán mínimos adicionales.

11. Se considerará y documentará solamente un mínimo, el cual responderá a la pena mayor.

12. Evidenciarán, además, en la nueva "Hoja de Control sobre Liquidación de Sentencia" lo siguiente:
    - Detainer
    - Warrant
    - Pena Especial

13. Se identificará en el registro de control (libro del área socio penal) cada uno de los casos reliquidados. Además, se indicará la fecha del cumplimiento del mínimo, con el fin de tener de manera accesible la información.

14. Se documentará en el expediente criminal todo el proceso aquí expresado, realizando las anotaciones correspondientes del ejercicio reliquidado en el orden de los delitos que se adjudicaron o que ya contenía sus mínimos cumplido con anterioridad.

15. Una vez el empleado de la Sección de Récord culmine el proceso descrito, referirá la nueva "Hoja de Control sobre Liquidación de Sentencia" a la Unidad de Servicios Sociopenales, para las acciones y los referidos correspondientes, según nuestras leyes y reglamentos.

16. Todos los confinados serán orientados sobre este procedimiento.

Expuesta la normativa jurídica que enmarca la controversia de epígrafe, procedemos a aplicarla.

**III**

En su primer señalamiento de error, el señor Febres Febres sostiene que, la parte recurrida incidió al confirmar la *Respuesta del [Á]rea Concernida/Superintendente* y aplicar la Ley Núm. 85, *supra,*

a una sentencia de seis (6) años por Ley de Armas que ya fue cumplida.

Como segundo señalamiento de error, la parte recurrente arguye que, la parte recurrida erró al confirmar la *Respuesta del [Á]rea Concernida/Superintendente* y nuevamente obligarle a cumplir la pena de seis (6) años por la Ley de Armas.

Adelantamos que, no le asiste la razón. Veamos.

Según se desprende del expediente, la parte recurrente fue sentenciada a cumplir diez (10) años de reclusión por infracción a Art. 121 del Código Penal de Puerto Rico de 2012 y seis (6) años de reclusión por infracciones al Art. 5.05 de la Ley de Armas de Puerto Rico. El 29 de diciembre de 2016, el Departamento de Corrección y Rehabilitación (DCR) emitió *Hoja Control sobre Liquidación de Sentencia.* En la misma concluyó que, la fecha en la que el señor Febres Febres cumplía el máximo global de la sentencia era el **8 de noviembre de 2032** y el mínimo global el **8 de mayo de 2027**. En cuanto a la sentencia por infracción a la Ley de Armas, especificó que, la fecha en la que cumplía el máximo de la sentencia era el 8 de noviembre de 2022 y el mínimo el 8 de noviembre de 2019.

Por otro lado, el 26 de enero de 2023, el DCR emitió una nueva *Hoja de Control sobre Liquidación de Sentencia.* Por medio de la misma, el DCR aplicó las disposiciones de la Ley Núm. 85, *supra* y computó el tiempo de la sentencia del señor Febres Febres. El nuevo cómputo reseñó que la fecha en la que cumpliría el máximo de su sentencia sería el **8 de julio de 2030** y el mínimo, el **8 de julio de 2022**.

Como podemos ver, la parte recurrida en su determinación aplicó correctamente el derecho vigente de manera favorable a la parte recurrente. Lo anterior, ya que, al realizar el nuevo cómputo de sentencia conforme a las disposiciones estatutarias, se le redujeron dos (2) años a la sentencia máxima impuesta al señor

Febres Febres y cinco (5) años a la mínima. La primera fecha de cumplimiento de sentencia global era el **8 de julio de 2032** y el mínimo el **8 de mayo de 2027,** la fecha actualizada para el cumplimiento de sentencia es **8 de julio de 2030** y el mínimo **8 de julio de 2022** (ya cumplido). De ninguna forma, dicha aplicación y determinación conflige con la sentencia cumplida en cuanto a las infracciones de la Ley de Armas, ni altera de manera negativa los términos impuestos mediante la sentencia.

En la controversia que nos ocupa, la parte recurrente no presentó evidencia suficiente que demostrara que la parte no actuó conforme a derecho en su *Resolución.* Cónsono con lo anterior, la parte recurrente no nos colocó en posición de variar la decisión del ente administrativo.

Ante la ausencia de una actuación arbitraria, ilegal, irrazonable o que constituya un abuso de discreción por parte de la agencia administrativa, razonamos que resulta innecesario que intervengamos con su determinación[5].

**IV**

Por los fundamentos que anteceden, se *confirma* la *Resolución* recurrida.

Notifíquese a las partes, al Procurador General y al Secretario del Departamento de Corrección y Rehabilitación. El Administrador de Corrección deberá entregar copia de esta *Resolución* al confinado, en cualquier institución donde este se encuentre.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís<br>
Secretaria del Tribunal de Apelaciones

---

[5] *Pérez López v. Depto. Corrección*, supra, pág. 673; *OEG v. Martínez Giraud*, supra, pág. 89; *Super Asphalt v. AFI y otros,* supra, pág. 819-820.